NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PA., Plaintiff,

v.

CONTINENTAL ILLINOIS
CORPORATION, et al.,
Defendants.

HARBOR INSURANCE COMPANY,
et al., Plaintiffs,

v.

CONTINENTAL ILLINOIS
CORPORATION, et al.,
Defendants.

Nos. 85 C 7080, 85 C 7081.

United States District Court,
N.D. Illinois, E.D.

July 16, 1986.

James G. Hiering, Dennis Waldon, Keck, Mahin & Cate, Chicago, Ill., for plaintiff.

Robert P. Scales, Freeman, Freeman & Salzman, P.C., Chicago, Ill., for certain defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

On June 20, 1986 this Court (in the "Letter," Ex. 1 to this memorandum opinion and order) wrote all counsel in these cases, outlining the facts relating to a possible ground for recusal under 28 U.S.C. § 455(a) ("Section 455(a)"). In accordance with the timetable and procedure specified by the Letter, all counsel have now submitted their views as to the potential applicability of Section 455(a) and the corresponding need or lack of need for recusal (see Exs. 2–7). This Court has considered the issue and, for the reasons stated in this memorandum opinion and order, rules recusal is not called for.

Determinations of "reasonableness" via plebiscite always harbor some potential for anomalous—or apparently anomalous—results. Thus every first-year law student is bemused by his or her first encounter with a 4-to-3 state supreme court decision in which the majority concludes that no reasonable jury could have reached a particular verdict—reflecting at least an implication as to the total lack of reasonableness of the dissenting justices.

For obvious reasons (quite apart from the factor just mentioned), the Letter made clear that it was not intended as a delegation or abdication of this Court's responsibility to decide objective reasonableness under Section 455(a): whether these were or were not proceedings "in which [my] impartiality might reasonably be questioned." Instead this Court believed the input from counsel—who might be presumed objective—could provide insights into possible areas of concern this Court might not have

perceived on its own, to enable this Court then to reach its decision after taking *all* factors into account.[1] And to maximize the free expression of views, this Court devised a procedure to assure anonymity on the part of counsel—with the one exception of the law firm whose interests might be thought to be most directly affected, and whose views might therefore be accorded greater weight on the subject.

This Court has several times dealt in writing with the competing considerations that bear on a judge's recusal from, or retention of, a case. See, e.g., *M.K. Metals, Inc. v. National Steel Corp.*, 593 F.Supp. 991 (N.D.Ill.1984); *Clay v. Doherty*, 608 F.Supp. 295 (N.D.Ill.1985); *Hampton v. Hanrahan*, 499 F.Supp. 640 (N.D.Ill. 1980), *appeal dismissed for lack of jurisdiction*, 643 F.2d 478 (7th Cir.1981). There is no need to reinvent the wheel by repeating or elaborating on those considerations, for the controlling principles here are identical. Instead it is necessary only to refer to the extended discussions in *M.K. Metals* and *Clay*, or even to the more terse statement of the standard as expressed by our Court of Appeals in the extraordinary circumstances of *Pepsico, Inc. v. McMillen*, 764 F.2d 458, 460 (7th Cir.1985):

> The test for an appearance of partiality is, as the language from [*SCA Services, Inc. v.*] *Morgan* [, 557 F.2d 110, 116] indicates, whether an objective, disinterested observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt that justice would be done in the case.

This Court has now applied those considerations and that standard here. Suffice it to say that:

1. None of the factors articulated in Ex. 7 (the one letter received from any counsel suggesting recusal) or conceived by this Court, even in hypothetical terms, is at all persuasive for disqualification.

2. It surely bears upon the reasonableness of questioning this Court's impartiality that—notwithstanding the total safeguards as to confidentiality provided by the procedure designed by this Court—only *one* "Counsel of Record" (Ex. 7) out of some 20 to 30 lawyers and law firms on the service-of-process list found *any* predicate for recusal. Everyone else expressed views to the contrary (see Exs. 2–6).

3. Freeman Freeman & Salzman—the law firm directly involved in the matter that gave rise to this Court's examination of the question—has specifically expressed its belief that the circumstances do not require this Court's recusal (see Ex. 3).[2]

Accordingly, as stated at the outset of this opinion, this Court will not recuse itself. These actions will continue on this Court's calendar.

### EXHIBIT 1

June 20, 1986

To: All counsel in the Continental Illinois Corporation directors' and officers' liability insurance cases, 85 C 7080 and 7081:

Although this is perhaps an item that should have come to my attention when these two cases came to me by random assignment, I have just become aware of a possible ground for my recusal (as occurred with the four judges preceding me in the random-reassignment chain). Because our next status date is not scheduled until July 24 and because I felt all counsel should have the opportunity to be apprised

---

1. Of course the nature and number of responses identifying any such possible concerns could also cast light on what a reasonable person might find questionable, but that was a potential side benefit: another item this Court could take into account in deciding that question. Such side benefit was obviously not the principal reason for communicating with the lawyers.

2. This factor should not be considered as having been given undue weight. This Court is sensitive to the possibility that the Freeman firm, having to disclose its own response, might conceivably be diffident about asserting a basis for recusal. At the same time, that firm is surely a responsible one, with a keen awareness of the duty its lawyers owe their clients—and if they had perceived a problem, they can reasonably be expected to have done their duty by expressing it.

of the circumstances, consider the matter with your clients and respond with any appropriate communications, I thought this letter to all counsel would be the most effective means of communication.

WAIT Radio is a partnership in which I have for many years owned a 1⅔% interest. In turn WAIT Radio is itself a 23% limited partner in Century Chicago Broadcasting, Ltd., a limited partnership that owns two radio stations in the Chicago area. Accordingly my interest in Century Chicago is an inactive one representing about 0.4% of the total ownership.[1]

Last year the controlling partner in WAIT Radio arrived at the opinion the general partner in Century Chicago had violated its fiduciary and other obligations, and suit on those claims was filed in this District Court (as a partner in WAIT Radio, I am necessarily included among the parties plaintiff). When the controlling partner decided to retain the Coffield Ungaretti firm as counsel, I immediately disqualified myself from each case on my calendar in which that firm was of record, and I have since looked at every newly-filed or newly-assigned case (including the current ones in which you are involved) to see whether that firm is on either side of the litigation.

Because I have played no active part in the WAIT Radio litigation (which incidentally was assigned to a District Judge not only outside our District Court but outside the Seventh Circuit), I have had no occasion to focus on the identity of defense counsel in that case. Just within the past few days, however, counsel from Coffield Ungaretti discussed with me arrangements for my deposition in the case, and in that connection I have been advised defendants are represented by Freeman, Freeman and Salzman. That in turn occasioned a fresh look at the service list of lawyers in your cases, and I noted that firm represents defendant Donald Miller.[2]

Clearly 28 U.S.C. § 455(b) is not implicated by that situation, but Section 455(a) may be. If it is in fact, a waiver of disqualification would nevertheless be permissible under Section 455(e). That seems to me to call for a two-part inquiry:

1.  whether the objective standard of Section 455(a) is indeed met here and

2.  whether, if so, the parties would nonetheless waive disqualification.

On the first subject the decision is my own, to be based on the statutory standard: whether my "impartiality might reasonably be questioned." Without in any way abdicating my responsibility in that respect, I believe it would be useful to obtain the observations of counsel to make certain I will have taken into account all possible considerations bearing on that standard.

At the same time, under no circumstances do I intend to create a situation in which anyone feels constrained from commenting because I may, after full consideration, conclude the cases should properly be kept on my calendar (with counsel therefore having to be concerned lest any comments suggesting possible recusal might redound to their disadvantage). Accordingly I am designating plaintiffs' counsel to be responsible for (1) receiving all comments and then (2) transmitting them in a redacted form that excludes all identification of the parties or lawyers involved. There is only one exception to that rule of anonymity: If Freeman, Freeman and Salzman or their client in these cases were concerned about any possibility of adverse treatment here due to the existence of the WAIT Radio litigation, that would seem a relevant factor in a Section 455(a) decision, and that ought to be an identified submission.

For like reasons, I would like all counsel to communicate among yourselves on the second subject (though it would of course be moot if I determine no disqualification is called for). That question of your willing-

---

1.  This should not be mistaken as any reflection of insignificance of the interest involved. Though I cannot specifically quantify the value of the holding (which is not a freely marketable asset), my share in the controversy is certainly material.

2.  Unlike my own passive posture in the WAIT case, the Freeman firm has (I am advised) been very active as defense counsel, and they have certainly known of my inclusion as a party plaintiff.

ness to waive disqualification should be answered by each of you whether or not you believe any basis for disqualification exists. Because any single "no" answer would be an effective veto (shades of the United Nations Security Council), I would expect to receive only a single answer (either "yes" or "no"). For that purpose I am also designating plaintiffs' counsel to be responsible for transmitting that communication once all counsel have answered the inquiry.

All submissions should be delivered to plaintiffs' counsel on or before July 7, 1986, and plaintiffs' counsel are directed to deliver the materials conforming to this letter in chambers on or before July 14, 1986. After I have received them, I will decide on the appropriate action.

One last point: As all of you know, before learning of the subject matter of this letter I had issued five memorandum opinions on matters that were pending motions when the cases came to my calendar. None directly involved Freeman, Freeman and Salzman's client. If the cases were to be retransferred, the transferee judge would of course be free to consider those issues afresh.

Sincerely,

/s/ Milton I. Shadur

Milton I. Shadur

MIS:wb

EXHIBIT 2

LAW OFFICES OF

KECK, MAHIN & CATE

A Partnership Including
Professional Corporations

8300 SEARS TOWER

233 SOUTH WACKER DRIVE

CHICAGO, ILLINOIS 60606–6589

(312) 876–3400

July 14, 1986

The Honorable Milton I. Shadur
U.S. District Courthouse
Room 2356
219 South Dearborn Street
Chicago, Illinois 60604

Re: Harbor Insurance Company, et al. v. Continental Illinois Corporation, et al.

*National Union Fire Insurance Company of Pittsubrgh Pa., v. Continental Illinois Corporation, et al.*

Dear Judge Shadur:

In accordance with Your Honor's June 20, 1986 letter to the parties in the captioned actions, we are enclosing the written responses of counsel who requested that such written responses be furnished to you with respect to the issues raised by 28 U.S.C. Section 455(a). All of the enclosed materials are submitted anonymously except for the letter of Freeman, Freeman & Salzman, P.C., who requested that we submit it in its entirety and without redactions.

The remaining parties simply conveyed to us without further comment the following:

(1) As to Your Honor's first question, the position of those parties is that there is no need for you to recuse yourself.

(2) As to your second question, those parties are willing to waive disqualification.

Very truly yours,

James G. Hiering, P.C.

JGH:pv
Encls.
cc: Counsel and parties on attached service list, w/encl. (Copies to counsel also include cover letters identifying the sources of the documents).

EXHIBIT 3

FREEMAN, FREEMAN & SALZMAN, P.C.

ATTORNEYS AT LAW

SUITE 2700

401 NORTH MICHIGAN AVENUE

CHICAGO, ILLINOIS 60611

July 3, 1986

The Honorable Milton I. Shadur
United States District Court
Northern District of Illinois
219 South Dearborn Street
Suite 2356
Chicago, Illinois 60604

Re: *National Union Fire Insurance Company v. Continental Illinois Corporation,* Civil Action No. 85 C 7080; and *Harbor Insurance Company v. Continental Illinois Corporation,* Civil Action No. 85 C 7081

Dear Judge Shadur:

This firm represents Donald C. Miller, former Vice Chairman of Continental Illinois Corporation, in the above captioned litigation. We write in response to your Honor's request that we consider whether the circumstances surrounding the pending litigation involving WAIT RADIO, Century Broadcasting Corporation and related individuals, including yourself, require your Honor's recusal from these cases. We believe they do not.

WAIT RADIO and the other plaintiffs filed their action on August 28, 1985. From the outset, we have represented Century Broadcasting Corporation, Inc., as well as Messrs. Grafman and Bonick, and as your Honor observes, we have been very active in the defense of that matter. Century Broadcasting has denied the allegations made by the plaintiffs, and is pursuing discovery that will include the taking of your Honor's deposition. While the outcome of that case is at present uncertain, we believe in the merits of our clients' position. In addition, Century Broadcasting has asserted counterclaims which, if successful, may result in damages being awarded to Century. Therefore, there can be little doubt that the litigants in that case are in a fully adversarial posture.

Nonetheless, your involvement as a plaintiff in the Century Broadcasting litigation does not clearly mandate your Honor's recusal from these cases under 28 U.S.C. § 455(a). The standard for disqualification under that section is whether an objective, knowledgeable member of the public would find a *reasonable basis* for doubting your impartiality. *E.g., M.K. Metals, Inc. v. National Steel Corporation,* 593 F.Supp. 991 (N.D.Ill.1984). First, no financial motive could reasonably be imputed to the conduct of these cases. While your Honor has a financial interest in the outcome of the Century Broadcasting litigation, that interest cannot be advanced through rulings in these cases, however adverse to Donald Miller. Second, it is unreasonable to think that these circumstances would predispose your Honor in favor of or against the arguments and representations of this firm in the conduct of its defense of Donald Miller. That Mr. Miller is only one of a number of individuals in a similar position and your Honor describes his posture in the Century Broadcasting litigation as a passive one reinforces this conclusion.

In any event, even if a plausible argument can be made for disqualification, it is our client's determination that any objection be waived. We are confident of fair and impartial treatment, and believe that your Honor will harbor no ill will toward Donald Miller or his counsel regardless of the outcome of the Century Broadcasting litigation.

> Sincerely,
> /s/ Robert P. Scales
> Robert P. Scales

RPS:am

EXHIBIT 4

July 7, 1986

Re: *Continental Insurance Corporation Directors' and Officers' Liability Insurance Cases, Docket Numbers 85 C 7080 and 85 C 7081*

Honorable Milton I. Shadur
United States District Court for the Northern District of Illinois
United States Courthouse
219 South Dearborn Street
Chicago, Illinois 60604

Dear Judge Shadur:

As counsel for one of the parties in the above-captioned litigation, we submit the following letter in support of our view that the remote connection between your honor and the Freeman, Freeman & Salzman firm, referred to in your honor's letter of June 20, 1986, does not require you to recuse yourself from further proceedings in these cases.

As your honor noted in your letter, the only possible statutory basis for recusal in this case is 28 U.S.C. § 455(a). That section provides that

[a]ny justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

As the Seventh Circuit has held, section 455(a) demands an objective determination of whether "there is a 'reasonable basis' for a finding of an 'appearance of partiality under the facts and circumstances of the case.'" *Pepsico, Inc. v. McMillan,* 764 F.2d 458, 460 (7th Cir.1985) (quoting *SCA Services, Inc. v. Morgan,* 557 F.2d 110, 116 (7th Cir.1977) (per curiam)). The test to be applied in making this determination is "whether an objective, disinterested observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt that justice would be done in the case." *Pepsico,* 764 F.2d at 460.

While a court which finds that such a significant reasonable doubt could exist is duty-bound to recuse itself, where a court finds that no such doubt could reasonably exist it is equally bound to decline to recuse itself. *See, e.g., Clay v. Doherty,* No. 81 C 1860, slip op. (N.D.Ill. Apr. 16, 1985); *Hawaii-Pacific Venture Capital Corp. v. Rothbard,* 437 F.Supp. 230, 234 (D.Hawaii 1977); *Simonson v. General Motors Corp.,* 425 F.Supp. 574, 578 (E.D.Pa.1976). This Court has itself recognized this dual responsibility in *M.K. Metals, Inc. v. National Steel Corp.,* 593 F.Supp. 991, 993–94 (N.D.Ill.1984), where it stated that recusal questions call into play two competing policies:

The first and most obvious policy is that courts must not only be, but must seem to be, free of bias or prejudice. To ensure that the proceedings appear to the public to be impartial and hence worthy of their confidence, the situation must be viewed through the eyes of the objective person. . . .

A second and less obvious policy is that a judge once having drawn a case should not recuse himself on an unsupported, irrational, or highly tenuous speculation; were he or she to do so, the price of maintaining the purity of appearance would be the power of litigants or third parties to exercise a negative veto over the assignment of judges.

. . . .

[D]isqualification is appropriate only if the facts provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality. Were less required, a judge could abdicate in difficult cases at the mere sound of controversy or a litigant could avoid adverse decisions by alleging the slightest of factual bases for bias. . . . This restricted mandate to disqualify is calculated to induce a judge to tread the narrow path between timidity and tenacity.

(Quoting *In re United States,* 666 F.2d 690, 694–95 (1st Cir.1984) (citation omitted).)

It is clear that the application of the foregoing standards mandates your honor's retention of the instant cases. Your honor has had no active participation in the Century Chicago Broadcasting, Ltd. litigation; you have had no attorney client relationship with the Freeman firm in any context; and, in fact, there is no reason to believe that you will ever have substantial contact with the Freeman firm at all. Only the most speculative conjecture could therefore lead anyone even to imagine that the Freeman firm's participation in the Century Chicago Broadcasting Ltd. case could have any affect whatsoever on your rulings in the instant case. Since such conjecture could not raise a significant doubt in the mind of a reasonable, objective, disinterested person, your honor should not recuse yourself.

Counsel for one of the Parties

EXHIBIT 5

MEMORANDUM

July 7, 1986

This memorandum is filed in response to the Court's request for counsel's observa-

tions on whether the objective standard for disqualification under § 455(a) is met under the circumstances described in the Court's June 20 letter. We strongly believe that Freeman, Freeman & Salzman's representation of the opposing side in another case in which the district judge is personally involved does not create a situation where the Court's impartiality might reasonably be questioned and therefore does not provide grounds for recusal under § 455(a).

Freeman, Freeman & Salzman and its client, Donald C. Miller, have been in the past and likely will continue in the future to be relatively minor players in this large multi-party case. Under the terms of the settlements in *Goodman,* Miller and the other officers will assign their rights to recover under the D & O policies to the class and the FDIC, which will then be responsible for litigating those rights. Accordingly, the eight law firms (including Freeman) who represent each of the individual defendants in the *Goodman* case will be taking a secondary role in the *Harbor* and *National Union* cases.

While the Freeman firm is involved in both cases, we understand that the individual lawyers on each case are different. Even assuming that the court were biased against certain lawyers in the Freeman firm as a result of the WAIT litigation, no reasonable person would suspect that such a prejudice would affect the disposition of the *Harbor* and *National Union* cases. To arrive at such a conclusion, one would have to assume that the judge would transfer his dislike for certain lawyers first to their entire firm, then to a totally unrelated client represented by that firm whom the Court has no reason to dislike, and finally to a large group of similarly situated defendants, represented by *other* law firms, as to whom the Court also has no personal feelings. Courts in similar situations have refused to make the leap from dislike of an attorney to prejudice against a party. See *Davis v. Board of Commissioners,* 517 F.2d 1044, 1050 (5th Cir.1975), *cert. denied,* 425 U.S. 944 (1976) (in deciding whether a judge should have disqualified himself or herself because of alleged prejudice, the

focus must be on alleged prejudice toward a *party* and not toward the lawyers); *Gilbert v. City of Little Rock,* 722 F.2d 1390, 1399 (8th Cir.1983), *cert. denied,* 466 U.S. 972 (1984) ("a controversy between a trial judge and an attorney for parties to an action would not require disqualification of the judge [under § 455(a)] in absence of showing of bias or personal prejudice to the *parties.*") (emphasis supplied.)

The additional leap from prejudice against one of a number of defendants to all of the defendants is simply too speculative to support any possible claim of bias. See, *e.g., United States v. Miranne,* 688 F.2d 980 (5th Cir.1982), *cert. denied,* 459 U.S. 1109 (1983) (allegations of bias arising out of the fact that the judge's son was an attorney in another lawsuit against a partnership in which a defendant in a criminal case before the court had a small interest were too speculative to create an appearance of partiality). Indeed, the possibility of bias against Freeman, Freeman & Saltzman affecting the Court's decisions in this case is so remote that, as this Court held in *Clay v. Doherty,* 608 F.Supp. 295, 299 (N.D.Ill.1985), the "public confidence in the impartiality of judicial proceedings ... would be jeopardized" rather than fostered by recusal.

## EXHIBIT 6

## STATEMENT REGARDING DISQUALIFICATION

Judge Shadur has advised us that he is a party plaintiff in a lawsuit in which Freeman, Freeman & Salzman represents the defendant. Because that firm also represents Donald Miller, a defendant in this litigation, Judge Shadur has asked us to comment on:

(1) whether this is grounds for his disqualification in these proceedings under 28 U.S.C. § 455(a); and

(2) whether, if this is a ground for disqualification under section 455(a), the parties would be willing to waive it under 28 U.S.C. § 455(e).

It is our position that the Freeman firm's participation in this case does not constitute grounds for disqualification under section 455(a), and that even if it did, we would be willing to waive those grounds.

Section 455(a) provides in relevant part that "[a]ny ... judge ... shall disqualify himself in any proceeding in which his impartiality might reasonably questioned." The Seventh Circuit has declared that the standard is "whether 'an objective, disinterested observer fully informed of the facts underlying the grounds on which recusal was sought would entertain significant doubt that justice would be done in the case'" *Union Carbide Corp. v. U.S. Cutting Service, Inc.*, 782 F.2d 710, 715 (7th Cir.1986), *quoting Pepsico, Inc. v. McMillen* 764 F.2d 458, 460 (7th Cir.1985). As Judge Shadur observed, "the propriety of recusal should be ascertained objectively, without reference either (i) to my perceptions of my own ability to maintain impartiality or (ii) to the concerns of the parties. *M.K. Metals, Inc. v. National Steel Corp.*, 593 F.Supp. 991, 997 (N.D.Ill.1984). The facts disclosed by the court in this case do not meet this objective standard for two reasons.

First, the suggested ground for recusal is that a reasonable person might question Judge Shadur's impartiality because of the Freeman firm's involvement in unrelated litigation in which the judge is a party. The theory is that this involvement might make the judge "sore" at the Freeman firm and therefore tend to make the judge biased against defendants. This reasoning, without more, does not require disqualification under section 455(a):

Antipathy to an attorney is insufficient grounds for disqualification of a judge because it is not indicative of extrajudicial bias against a "party." [citation omitted].

Similarly, under 28 U.S.C. § 455(a) ... a controversy between a trial judge and an attorney for parties to an action would not require disqualification of the judge in the absence of showing of bias or personal prejudice to the parties. [citation omitted].

The standard for determining the appearance or fact of particular grounds for recusal or disqualification of a trial judge is the same....

*Gilbert v. Little Rock*, 722 F.2d 1390, 1398–99 (8th Cir.1983); *see also United States v. Burt*, 765 F.2d 1364, 1368 (9th Cir.1985) ("Personal bias or a prejudiced attitude must be against the party, not against the attorney for the party."); *United States v. Carignan*, 600 F.2d 762, 764 (9th Cir.1979); *Davis v. Board of School Commissioners*, 517 F.2d 1044, 1052 (5th Cir.1975). Thus the facts disclosed are not grounds for recusal because at most they could suggest only some potential bias or prejudice against the attorneys for one of the defendants, a hypothesis that does not reasonably call Judge Shadur's impartiality as to the *parties* into question. Even if Judge Shadur were in fact prejudiced against the Freeman firm, disqualification would not be required.

Second, the reasoning that would call Judge Shadur's impartiality into question is attenuated at best. "[I]t is one thing to assume that judges are human beings with the usual human emotions and another to attribute to them a malevolent, a calculating vindictiveness." Union Carbide, 782 F.2d at 716. As the court declared in *In re United States*, 666 F.2d 690, 694 (1st Cir. 1981),

a judge once having drawn a case should not recuse himself on an unsupported, irrational or highly tenuous speculation; were he or she to do so, the price of maintaining the purity of appearance would be the power of litigants or third parties to exercise a negative veto over the assignment of judges.

*quoted in M.K. Metals*, 593 F.Supp. at 994. *See also Suson v. Zenith Radio Corp.*, 763 F.2d 304, 308 n. 2 (7th Cir.1985) ("The district judge is, of course, obligated not to recuse himself without reason just as he is obligated to recuse himself when there is a reason"); *United States v. Baskes*, 687 F.2d 165, 170 (7th Cir.1981) ("A motion for

recusal should not be granted lightly; a judge is under as much obligation not to recuse himself when the facts do not show prejudice as he is to recuse himself if they do.").

For the foregoing reasons, it is our position that there are no grounds for recusal under section 455(a). However, if Judge Shadur concludes otherwise, we are willing to waive disqualification based on the facts disclosed.

EXHIBIT 7

July 14, 1986

Hon. Milton I. Shadur
U.S. District Courthouse
Room 2356
219 S. Dearborn Street
Chicago, IL 60604

Re: *Harbor Insurance Company and All-state Insurance Company v. Continental Illinois Corporation*, et al. Case No. 85 C 07081

*National Union Fire Insurance Company of Pittsburgh, Pa., v. Continental Illinois Corporation*, et al. Case No. 85 C 07080

We are counsel of record in the above-numbered cases. Pursuant to the Court's letter of June 20, 1986, we hereby submit our view that Your Honor should recuse himself pursuant to 28 U.S.C. § 455(a) because your "partiality might reasonably be questioned."

The test to determine the appearance of partiality is whether an objective and disinterested observer, fully informed of the facts underlying the grounds on which recusal would be based, would entertain a significant doubt that justice would be done in the case. *Pepsico, Inc. v. McMillen*, 764 F.2d 458 (7th Cir.1985). Section 455(a) is not intended to protect litigants from actual bias, but rather to promote public confidence in the impartiality of the judicial process. *United States v. Balistrieri*, 779 F.2d 1191, 1204 (7th Cir.1985); *United States v. Murphy*, 768 F.2d 1518, 1540 (7th Cir.1985). The provision was explained as

follows by the Reporter for the ABA committee that drafted the Code of Judicial Conduct in which it appears:

Any conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification. Thus, an impropriety, or the appearance of impropriety, in violation of Canon 2 that would reasonably lead one to question the judge's impartiality in a given proceeding clearly falls within the scope of the general standard, as does participation by the judge in the proceeding if he thereby creates the appearance of impropriety. Wright, Miller, Cooper, *Federal Practice and Procedure*, Vol. 13A, § 3549, p. 612.

The facts in this case would create such an appearance of impropriety. Freeman, Freeman & Saltzman is actively opposing the Court's personal claim in the WAIT litigation. As part of that defense, the firm will be taking Your Honor's deposition in a fully-adversarial setting. The firm has also filed a counterclaim. The financial interests of the Court thus are directly at issue in a lawsuit being conducted by attorneys appearing before the Court in these insurance cases.

An objective observer could reasonably conclude that an appearance of impropriety exists regardless of the outcome of these cases. If, for example, the Court loses in the WAIT case and then rules in this case against Donald Miller, the client of Freeman, Freeman & Saltzman and the No. 3 man at Continental during the relevant time period, the appearance of bias is clearly present. If the Court rules against the plaintiff insurance companies, on the other hand, the possibility exists that the Court would be perceived to be "leaning over backwards" to avoid the appearance of impartiality that might attend any ruling against Mr. Miller. *See Maier v. Orr*, 758 F.2d 1578, 1582, n. 4 (Fed.Cir.1985); *United States v. Murphy*, 768 F.2d 1518, 1540 (7th Cir.1985). The same "leaning over backwards" appearance of impropriety would

also obtain if, for example, Mr. Miller's D & O insurance coverage were ruled to be in place while the coverage of other officers and directors were ruled to be excluded. The potential for the appearance of impartiality permeates these insurance actions because of the Court's involvement as a party in the WAIT litigation.

While some courts have interpreted section 455 as not covering situations concerning bias against the attorney, as opposed to a party, that interpretation is not universal. In *United States v. Ritter*, 540 F.2d 459, 462 (10th Cir.1976), for example, the court stated that "bias in favor of or against an attorney can certainly result in bias toward the party," and under those circumstances the judge's "impartiality might reasonably be questioned in relationship to the party."

The Seventh Circuit concurs. As the Court recognized in *Pepsico, Inc. v. McMillen*, 764 F.2d 458, 460 (7th Cir.1985), "the relationship ... between a judge and a lawyer in a case before him is of course a familiar basis for recusal." In that case, Judge McMillen was ordered to recuse himself because his economic interests might have been affected, albeit inadvertently, by virtue, of interaction with the law firms appearing in front of him. To paraphrase the Court in *Pepsico* (764 F.2d at 461) in conjunction with what might occur here: "A fully informed and objective observer might wonder whether the judge could decide the case with the requisite aloofness and disinterest when he had just" been deposed by the law firm appearing in front of him and had just suffered a monetary loss as a result of the counterclaim prosecuted against him by that firm. This Court has previously decided in favor of recusal when no personal involvement whatsoever existed with the parties or the case at hand. *Hampton v. Hanrahan*, 499 F.Supp. 640 (N.D.Ill.1980).

As in the *Pepsico* case, there is no suggestion of actual bias in the present matter. However, the Seventh Circuit's strict standards, which mandate careful scrutiny of potentially troublesome situations, plainly counsel a voluntary recusal.

Counsel of Record