In re James P. WYSLAK, Debtor.

Bankruptcy No. 88 B 11685.

United States Bankruptcy Court, N.D. Illinois, E.D.

Dec. 13, 1988.

Peter Francis Geraci, Chicago, Ill., for debtor.

M. Scott Michel, Chicago, Ill., U.S. Trustee.

Catherine Steege, Jenner & Block, Chicago, Ill., for Chapter 7 trustee.

## MEMORANDUM AND OPINION ON MOTION OF DEBTOR'S COUNSEL FOR COURT RECUSAL AND DISMISSAL OF COURT ORDER FOR FEE APPLICATION

JACK B. SCHMETTERER,
Bankruptcy Judge.

This is a Chapter 7 proceeding in which Trustee reported no assets and also stated in her "No–Asset" report that Debtor's counsel Peter Geraci was paid or promised a fee of $850 herein. Along with other no-asset Chapter 7 cases, this Court ordered pursuant to 11 U.S.C. § 329 and § 330, and Bankr.R. 2016 and 2017 that Mr. Geraci file a fee application giving requested information. He has done so and also moved to dismiss the fee proceeding and for this Court to recuse himself. For reasons stated below those motions are each denied.

### Background of Proceeding

No objection has been filed to the fee indicated. However, this Court has the authority and duty to inquire independently into fees of professionals in bankruptcy matters even where no objections are filed, both under the foregoing cited authority and consistent precedent. See authorities

1. In asset Chapter 7 cases, in Chapter 13, and in Chapter 11, all professional fees are passed on by the court when presented by fee applications on notice.

2. In view of prepaid legal services, it is not surprising that some fees are reported at zero. However, we know of no explanation for blanks left empty by trustees, except that debtor's counsel did not report their fees and the trustees in those cases did not inquire to ascertain the amounts of fees paid to debtor's counsel.

cited in *In re Wildman*, 72 B.R. 700, at 705 (Bankr.N.D. of Ill.1987).

The occasion for the Court order for fee review in this and other no-asset Chapter 7 cases should first be stated.

There is only one area in bankruptcy as practiced in this District in which no rule or statute requires the lawyer to file a fee application except when ordered by the court. That is so only in no-asset Chapter 7 cases.[1] Chapter 7 trustees have heretofore been relied on to provide a sufficient review of fees in no-asset cases. They have an obligation to call any fee problems to the attention of the court. However since coming to this bench in May of 1985, this Court has received only one complaint from any source concerning fees of debtor's counsel in a no-asset Chapter 7 case. The practice has been that trustees report the fees of debtor's counsel on their no-asset reports, and the court is asked to close the case. We have literally rubber stamped those matters.

A survey was conducted by my staff of all Chapter 7 No–Asset Reports of trustees received by this chambers. That survey has been extended to include the months of September, October, and through November 24th of 1988, and will be extended into the future for a time. The survey consisted simply of recording the fees of debtor's counsel reported by trustees in their no-asset reports reviewed by us in all such cases. Of the 345 no-asset reports thereby reviewed, the following was noted:

In 68 (20%) the blank for fees of debtor's counsel was either left blank or reported at zero.[2]

While the work by Chapter 7 trustees in this District is generally commendable, it is apparent from the foregoing that some do not always inquire into fees paid to debtor's counsel. Moreover, in Chapter 7 asset cases, some trustees will on occasion report that fees to debtor's counsel are "unknown" but nonetheless that there is "no basis to request an examination of said fee pursuant to 11 U.S.C. § 329."

These remarks are intended to comment on the background for all the fee hearings ordered, not to suggest that trustee in this particular case was deficient.

In 14 (4%) the fees reported were $1,000 or more.

In 44 (13%) the fees reported were more than $850 but less than $1,000.

In 125 (36%) the fees reported were between $500 and $850.

In 94 (27%) the fees reported were $500 or less.

The fees reported ranged from a low of $100 to a high of $2,000.

This and other bankruptcy judges have not heretofore reviewed fees in Chapter 7 no-asset cases, having not formulated standards or procedures for doing so, and no fee applications have been required in those cases except in a handful of unusual cases that came to judicial attention. In short, we have let the marketplace set fees of counsel in those cases, usually through agreement with the Chapter 7 debtors.

The aforesaid survey showed both a broad range of fees reported and also that many fees exceeded the high end of the scale awarded in Chapter 13 cases in this District (about $850 in uncomplicated cases in which debtors save their homes). That fact raises several questions: First, are Chapter 7 no-asset cases more difficult or simpler than Chapter 13 cases, so as to suggest that the fees sought therein should or should not exceed those awarded in Chapter 13 cases? Second, is the lack of judicial supervision of fees in no-asset Chapter 7 cases encouraging attorney use of Chapter 7 instead of Chapter 13 contrary to the spirit of the Code? Third, whether or not it is correct, as contended by some members of the Bar, that fees allowed in Chapter 13 in this District are too low and those fees should be raised to the range now charged in Chapter 7 no-asset cases?

This Court therefore sought input from the bar through hearings on the fee petitions that were ordered to be filed. It was intended that hearings would then be held in a number of cases so as to obtain diversity of input and guidance, and thereby help the Court to formulate standards and procedures.

At the initial hearing herein, Debtor's counsel and attorneys in other similar cases reported that a consolidated fee hearing set by Judge Ginsberg in Chapter 13 cases had been expanded to include analysis of fees in Chapter 7 cases. Since he had already set a hearing date, many counsel requested that the instant hearing and others like it before this Court be deferred. In the interests of judicial economy and so as not to burden the various counsel with more than one such hearing, the hearings in this Court are being deferred until we see the results from Judge Ginsberg. Therefore the ordered fee hearings in cases assigned to this Court were not held and were all adjourned *sine die* pending Judge Ginsberg's on-going consolidated evidentiary hearing.

In the meantime, Debtor's counsel in this case filed his fee application as ordered, a motion to dismiss the court-ordered hearing, and another motion for this Court to recuse or be disqualified. Those motions are discussed hereinbelow.

However, in view of the obvious anger and resentment displayed in open court by some debtors' counsel in this and other cases at the Court's initiation of inquiry into this area, certain additional introductory comments are warranted.

■ Retainers paid to debtor's counsel in bankruptcy cases are property of the bankruptcy estate and subject to judicial review. *In re Chicago Lutheran Hospital Ass'n.*, 89 B.R. 719 (Bkrtcy, N.D.Ill., 1988; J. Ginsberg); see also *In re Burnside Steel Foundry Co.*, 90 B.R. 942 (Bkrtcy, N.D.Ill., 1988, J. Ginsberg); *In re Chapel Gate Apts. Ltd.*, 64 B.R. 569 (N.D.Tex., 1986, J. Abramson); *In re Martin*, 817 F.2d 175 (1st Cir.1987).

It should be apparent to the Bar that bankruptcy courts in this and other Districts are engaged through case by case analysis in consideration of fee practices and awards in bankruptcy.

Indeed, the hearing by Judge Ginsberg relates to facets of this. There is certainly room for judicial analysis of reasonableness of fees in no-asset Chapter 7 cases, the nature of proper occasions and procedures for judicial inquiry, and the role of

panel Chapter 7 trustees in scrutinizing these fees.

As in many areas of law and bankruptcy practice in this District, judges of this Bankruptcy Court have begun questioning our way of doing things through proceedings and hearings in particular cases. This is not the first nor the last inquiry into practices and procedures that are so ancient and unquestioned that "the memory of man runneth not to the contrary."

Age of an unquestioned practice justifies a careful review before changing the practice, but does not immunize that practice from being questioned.

As the instant inquiry and those that doubtless lie ahead are presented either by opponents or by the various judges *sua sponte*, good professional attorneys—and that means most of our excellent bankruptcy bar—will treat such inquires as professional challenges, not threats by the court.

### Motion to Dismiss

██ The thrust of this motion is that (1) Debtor approved the fee here, (2) the Chapter 7 trustee did not question it, and (3) no evidence is before the Court to show that the fee is not warranted. Counsel also filed materials tending to show the complexity of work in Chapter 7 and the value of his service. He purports to file his motion to dismiss under Fed.R.Civ.P. 41(b), Bankr.R. 7041.

The points advanced may certainly be argued at any future hearing to be grounds for upholding the fee desired. However, it provides no basis for arguing that this Court should hold no hearing and make no determination, and it provides no basis for dismissing the proceeding. If this motion had merit, every bankruptcy lawyer could file similar materials and motion so as to block the bankruptcy court from even holding any fee hearing and asking questions about the work performed and fees sought.

An order for fee hearing is not a complaint or action by the Court against the lawyers, though moving counsel and a few other attorneys seem to treat it as such. Such order is rather an inquiry often re-quired in bankruptcy under the statute, rules, and authority cited hereinabove. Fed.R.Civ.P. 41(b) applies to dismissal of "an action or of any claim against the defendant" after "the plaintiff, in an action tried by the court without a jury, has completed the presentation of evidence...." A fee proceeding is neither a "claim" nor an "action" against the lawyer. Indeed, Fed.R.Civ.P. 41(b) is applied by Bankr.R. 7041 only to adversary proceedings (Bankr. R. 7001 *et seq.*). While counsel treats the Court as his adversary, that is not the reality either of this Court's views or of the proceeding itself. Therefore counsel's citation of Fed.R.Civ.P. 41(b) as a basis for his dismissal motion is obviously misplaced. By separate order, his motion to dismiss will be denied.

### Motion for Recusal and Disqualification

Counsel has strongly attacked this Court by challenging the reduction of his fees in Chapter 13 cases under standards previously published by this Court, [*See In re Richardson*, 89 B.R. 716 (Bankr.N.D.Ill. 1988) and *In re Paraday*, 87 B 16892, (Bankr.N.D.Ill. May 6, 1988) [1988 WL 146944], cases which were not appealed to our knowledge.] In those earlier cases this counsel attacked most if not all of the bankruptcy judges in this District, both past and present, as having sought to drive him and other attorneys out of business by means of reviewing fees and sometimes ordering reductions in his Chapter 13 cases. This time, he lays all the blame for that charge at this doorstep, except for noting that Chief Judge Schwartz recently inquired into (and allowed) his fees in two no-asset Chapter 7 cases. We must decline to be thus singled out for credit or blame, since the range of Chapter 13 fees allowed by all bankruptcy judges in this District is generally the same. Indeed, the most recent increase in the range allowed within this District resulted from an opinion entered by this Court. *See In re Richardson* and *In re Paraday*, *supra*.

Apart from complaining about fee reductions he suffered in Chapter 13 cases, coun-

sel objects to this Court's practice of relying in any regard on experiences as a bankruptcy judge or as a former practicing attorney.

Fee hearings in bankruptcy are normally considered to be summary proceedings, usually conducted on the papers presented. Evidence from the stand is only rarely necessary. *See In re Wildman*, 72 B.R. 700 (Bankr.N.D.Ill.1987) and *In re Pettibone*, 74 B.R. 293 (Bankr.N.D.Ill.1987) and cases cited.

■ A bankruptcy judge is expected to rely to some degree on his experience to consider the work reported and value requested for various tasks and the expenses and fees sought thereby. *In re TMT Trailer Ferry, Inc.*, 577 F.2d 1296, at 1304 (5th Cir.1978); *B–M–G Investment Co. v. Continental/Moss Gordin, Inc.*, 437 F.2d 892, 893 (5th Cir.), *cert. denied* 402 U.S. 989, 91 S.Ct. 1668, 29 L.Ed.2d 154 (1971); *Campbell v. Green*, 112 F.2d 143 (5th Cir.1940); *Mercantile–Commerce Bank & Trust Co. v. Southeast Arkansas Levee Dist.*, 106 F.2d 966, 972–73 (8th Cir.1938); *In re Liberal Market, Inc.*, 24 B.R. 653, 657 (Bankr.S.D. Ohio 1982); *In re WHET, Inc.*, 61 B.R. 709, 713 (Bankr.D.Mass.1986); Lavien, *Fees as Seen from the Bankruptcy Bench*, 89 Com.L.J. 136, 138 (March 1984).

Indeed, bankruptcy judges must do so. Otherwise, the summary hearings conducted in most cases would become impossibly long and each court would be obliged to call witnesses in to testify as to any questioned element of a requested fee. Were that required, the hearing obligation of bankruptcy judges to review fees that now is only burdensome would then require a choice between endless fee hearings to the disregard of other matters, or a judicial rubber stamping of all fees. Until that state of the law is ordered by higher authority, this and all other bankruptcy judges will continue to rely in some part on their judicial and non-judicial experience in line with authority that makes that appropriate.

It should be added, of course, that where judicial experience prompts concern, the attorney should be told of the concern in order to have a fair chance to comment and offer evidence if he sees fit.

Upon the filing of the instant motion to recuse, counsel was asked to state the basis for his motion. He did so on the record. He literally asserts that the experience of this Bankruptcy Judge cannot be considered unless the Court takes the stand and testifies. Because I would not so proceed, and also because I initiated the fee hearing *sua sponte*, he asserts that the Court should recuse or be disqualified.

He cites no authority in this motion and has filed no authority in support of it. The only possible basis perceived is 28 U.S.C. § 455(a) under which a judge should disqualify himself "in any proceeding in which his impartiality might reasonably be questioned," or 28 U.S.C. § 455(b)(1) which requires recusal if the judge has either personal bias or personal knowledge of disputed evidentiary facts concerning the proceeding.

### *§ 455(a)*

■ An asserted charge of reasonable basis for doubting impartiality must be founded on facts which would create a reasonable doubt, not in the mind of the judge himself nor necessarily in the mind of the litigant, but rather in the mind of a reasonable man. *United States v. Martorano*, 620 F.2d 912, 919 (1st Cir.) *cert. denied* 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980) citing *United States v. Cowden*, 545 F.2d 257, 265 (1st Cir.1976), *cert. denied* 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977). The language of the statute does not warrant allowing a litigant's fear of an adverse decision to be transformed into a fear that the judge will not be impartial. *Idaho v. Freeman*, 507 F.Supp. 706, 722 (D. Idaho 1981) citing S.Rep. No. 93–419, 93rd Cong., 1st Sess.1973, p. 5.

In *Hampton v. Hanrahan*, 499 F.Supp. 640, 645 (N.D.Ill.1980) (Shadur, J.), appeal dismissed *Hampton v. Chicago*, 643 F.2d 478 (7th Cir.1981), Judge Shadur stated that "[t]hough I am morally certain that I would in fact be impartial in this proceeding, that is not the standard; the test is

rather whether my impartiality 'might reasonably be questioned'."

Judge Shadur elaborated on that standard in *M.K. Metals, Inc. v. National Steel Corp.*, 593 F.Supp. 991 (N.D.Ill.1984).

*M.K. Metals* moved for recusal of Judge Shadur under § 455(a) based mainly upon Judge Shadur's asserted relationship to the witness Carlton. Relying upon *In re United States*, 666 F.2d 690, 694 (1st Cir.1981), the court enunciated the competing policy considerations and the objective standard which a court must use in determining whether recusal is appropriate:

> The first and most obvious policy is that courts must not only be, but must seem to be, free of bias or prejudice.... A second and less obvious policy is that a judge ... should not recuse himself on an unsupported, irrational, or highly tenuous speculation; were he or she to do so, the price of maintaining the purity of appearance would be the power of litigants or third parties to exercise a negative veto over the assignment of judges.

*M.K. Metals*, 593 F.Supp. at 694–95.

Judge Shadur went on to find that the objective standard which should be used was whether from the facts an objective and knowledgeable member of the public would find "a reasonable basis for doubting the judge's impartiality." *M.K. Metals*, 593 F.Supp. at 994. In conclusion Shadur held that the propriety of recusal should be ascertained objectively, without reference by the court either to his perception of his own ability to maintain impartiality or to the concerns of parties before him as opposed to the hypothetical reasonable person. *M.K. Metals*, 593 F.Supp. at 997. *See also Union Carbide Corp. v. U.S. Cutting Service, Inc.*, 782 F.2d 710, at 715 (7th Cir.1986).

■ In the instant case, no objectively reasonable litigant could believe that a bankruptcy judge who follows consistent authority to rely on experience in fee hearings should therefore have his impartiality reasonably questioned. We who serve on the Bankruptcy Court in this District are entitled to rely in part on our judicial and non-judicial experience in considering fee applications, and all do so to some degree. Further, we have a duty to inquire into fees even when no objections are raised as noted at the outset of this opinion. No objective litigant could reasonably conclude that these practices give rise to questions about impartiality.

### § 455(b)(1)

■ The purpose of the § 455(b)(1) provision for recusal is to disqualify the judge "where he has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding." (Emphasis supplied.) Counsel has not asserted that this Court has any personal knowledge about his work on the instant case. Of course, this Court knows nothing about his work except as may appear from the record of proceedings and the pending fee application of counsel. Therefore this Court is not and cannot become a witness to "evidentiary facts".

Based on authority cited above, it is clear that counsel erred in asserting that some reliance by a bankruptcy judge on his experience in the course of fee hearings amounts to the court being a testimonial witness who should take the stand. Judicial experience is not same as "evidentiary" facts concerning the proceeding, and that part of § 455(b)(1) is therefore not applicable.

■ He also argues without foundation that this Court "is motivated by personal animosity" toward counsel as demonstrated by orders in Chapter 13 cases reducing his fees. He also complains of observations by this Court in his Chapter 13 cases that fees requested in similar cases by other counsel are—in this Court's experience—frequently lower than those of this counsel, so that his fees were reduced as being higher than a reasonable and necessary level in this community. In short, he complains of "personal animosity" because his fees have been reduced in Chapter 13 cases by rulings that he never appealed. Complaint about rulings in a prior unappealed case does not demonstrate judicial

bias. Indeed, this Court's rulings in the cases decided this year were at a range higher than allowed by most bankruptcy judges in this District at the time. The suggestion that any reduction of fees demonstrates judicial bias borders on the frivolous. Perhaps counsel is again suggesting that this Court should not rely on experience derived from reviewing thousands of fee petitions in Chapter 13 and 7 cases in order to know that fees sought in other similar cases are lower than his, and that such reliance demonstrates bias. If that is his rational, it can have no merit in the light of authority cited above making reference to judicial experience appropriate and necessary in fee matters.

## CONCLUSION

By separate order entered this date, the motions to dismiss and recuse will each be denied. Further hearing on the fee proceeding will be adjourned *sine die* until Judge Ginsberg's consolidated hearing is completed on related matters.

These decisions are of course subject to review. However, in the light of lack of authority to support the motions counsel would be well advised to note Judge Aspen's comments in *In re Cash Currency Exchange,* 85 B.R. 797, 798 (N.D.Ill.1988) (Aspen, J.):

> [T]he remedy of mandamus is reserved for serious questions, and accordingly, in "frivolous and even routine cases in which a party challenges the judge's refusal to recuse himself, mandamus will be denied—with sanctions, if the petition for mandamus is frivolous." *Union Carbide Corp. v. United States Cutting Service, Inc.,* 782 F.2d 710, 713 (7th Cir. 1986).

*Cash Currency Exchange,* 85 B.R. at 798.