In re William J. STOECKER, Debtor.

Bankruptcy No. 89 B 02873.

United States Bankruptcy Court,
N.D. Illinois, E.D.

May 24, 1990.

Thomas Raleigh, Raleigh & Helms, Chicago, Ill., Trustee.

David Missner, Leroy Inskeep, Rudnick & Wolfe, Chicago, Ill., Representative of Rudnick & Wolfe.

Gerald F. Munitz, Jim Blanco, Winston & Strawn, Chicago, Ill., Amy R. Wolf, Wachtell, Lipton, Rosen & Katz, New York City, for Connecticut Bank and Trust Co.

Ronald W. Hanson, James A. Cherney, Latham & Watkins, Chicago, Ill., Jonathan L. Greenblatt, Kenneth A. Freeling, Shearman & Sterling, New York City, for Citibank, N.A.

M. Scott Michel, Chicago, Ill., U.S. Trustee, Richard C. Friedman, Chicago, Ill., for trustee.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the application of Rudnick & Wolfe (the "Applicant") pursuant to 11 U.S.C. § 330 and Federal Rule of Bankruptcy Procedure 2016 for allowance of final compensation in the amount of $102,283.65 [1] and reimbursement of expenses in the amount of $7,485.05 from the period March 9, 1989

through October 31, 1989. Proper notice was given to all creditors and parties in interest pursuant to Federal Rule of Bankruptcy Procedure 2002. For the reasons set forth herein, the Court hereby allows the Applicant compensation in the amount of $130,000.00 and reimbursement of expenses in the amount of $6,597.33.

A hearing was held on the fee application on January 18, 1990. Objections were filed by Citibank, N.A. ("Citibank"), Thomas Raleigh, ("Raleigh") the trustee of the estate of William J. Stoecker (the "Debtor"), the United States Trustee, and The Connecticut Bank and Trust Company ("Connecticut Bank"). The Court allowed the parties to amend or supplement the application and the objections. Subsequently, on March 13, 1990 a second hearing was conducted. At that time, the Court heard testimony from representatives of the Applicant. The Court gave the Applicant leave to submit closing arguments by or before March 23, 1990. Responses thereto were due April 6, 1990 and any reply was due April 13, 1990. Thereafter, the matter was taken under advisement.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this fee application pursuant to 28 U.S.C. § 1334 and General Rule 2.33(a) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), and (O).

## II. FACTS AND BACKGROUND

Many of the facts, background and some of the history of this case is contained in an earlier Opinion of the Court. *See In re Stoecker*, 103 B.R. 182, 184–185 (Bankr.N. D.Ill.1989). On February 21, 1989, an in-

---

1. The Applicant originally sought compensation in the amount of $122,100.15. On November 29, 1989, the Applicant filed a supplemental fee application whereby it sought additional fees of $3,872.00 and expenses of $6.00, thus increasing the request to $125,972.15 in fees and $7,491.05 in expenses. Thereafter, on February 16, 1990, the Applicant filed a supplement to the application and requested reduced fees of $121,121.07 and expenses of $7,485.05. This request, however, contained an arithmetic error and the

memorandum filed by the Applicant noted this error. Hence, the Applicant seeks final compensation in the amount of $102,283.65 and expense reimbursement in the sum of $7,485.05 for the period covered by the Application. In addition, the Applicant rendered various services to the Debtor pre-petition which totalled $82,218.39. Thus, the sum of the total fees requested for services pre-petition ($82,218.39) plus post-petition, as reduced ($102,283.65) is $184,502.04.

voluntary Chapter 11 petition was filed against the Debtor. Prior thereto, involuntary petitions were filed against five corporate holding companies; Grabill Corporation, Camdon Companies, Inc., Foxxford Group, Ltd., The Techna Group, Ltd. and Windsor–Hamilton, Ltd. Stoecker is the sole equity holder in those related corporate debtors. The background information concerning those cases is contained in earlier Opinions of the Court. *See In re Grabill Corp.*, 110 B.R. 356, 358 (Bankr.N.D. Ill.1990); *In re Grabill Corp.*, 103 B.R. 996, 997–998 (Bankr.N.D.Ill.1989).

On March 8, 1989, after a full evidentiary hearing, the Court ordered the appointment of a Chapter 11 trustee. Shortly thereafter, on March 14, 1989, the Court entered an order for relief under Chapter 11. Raleigh was thereafter appointed by the U.S. Trustee on March 20, 1989, to serve as trustee of the Chapter 11 estate. The case was subsequently converted to Chapter 7 on February 26, 1990. Raleigh was thereafter appointed by the U.S. Trustee to serve as interim trustee of the Chapter 7 estate pursuant to 11 U.S.C. § 701(a). Raleigh continues to serve as the trustee under 11 U.S.C. § 702(d).

The Applicant was originally retained pre-petition by the Debtor on or about January 17, 1989. On April 11, 1989, the Applicant filed the requisite statement pursuant to 11 U.S.C. § 329 and Bankruptcy Rule 2016(b), disclosing that it had received a $150,000.00 retainer from the Debtor. On April 13, 1989, the Court entered an Order authorizing the employment of the Applicant *nunc pro tunc* to February 21, 1989. Thereafter, on August 11, 1989, the Applicant filed a supplemental statement disclosing that it received an additional retainer in the amount of $10,000.00 from Thomas A. Durkin, criminal counsel for the Debtor, in connection with "matters stated in the April 11, 1989 Affidavit." On September 18, 1989, pursuant to leave of Court, the Applicant withdrew as counsel for the Debtor upon the Debtor's discharge of the Applicant in open Court. Although the Applicant withdrew on said date, it seeks fees through October 31, 1989.

### III. ARGUMENTS BY THE PARTIES

Several parties have filed objections to the fee application based upon various grounds. Raleigh objects to payment of any fees or expense reimbursement subsequent to the Applicant's withdrawal on September 18, 1989. Moreover, Raleigh questions the benefit to the estate of many of the services performed in light of the fact that such services were rendered in connection with the Debtor's criminal defense of various bankruptcy fraud charges. Furthermore, Raleigh suggests that some of the services performed by the Applicant related to his duties as trustee pursuant to 11 U.S.C. §§ 704 and 1106, and the Applicant was not authorized pursuant to 11 U.S.C. § 327(e) to be employed as special counsel to represent the estate on such matters. Raleigh concludes that an allowance of $49,391.64 is appropriate compensation and $6,294.20 in expenses should be reimbursed for the post-petition period. Raleigh makes no objection to the fees charged by the Applicant for the pre-petition services.

Connecticut Bank objects to any fee allowance whatsoever based on a lack of benefit to the estate. Furthermore, Connecticut Bank alleges that the services were for the benefit of the Debtor alone and not the estate. Additionally, Connecticut Bank argues that some of the work was duplicative of work performed by Raleigh.

Citibank objects to many of the services on the basis that the Debtor's estate was not benefitted. In fact, Citibank suggests that many of the services were for the benefit of the five corporate estates. Moreover, Citibank objects to some of the post-petition services as they are allegedly duplicative of the work performed by Raleigh and his counsel. Citibank concludes that $43,441.70 would be an appropriate allowance for compensation, and concurs with Raleigh's recommended expense reimbursement of $6,294.20. Citibank does not object to the fees charged by the Applicant for pre-petition services, although it suggests that only $80,859.89 should be allowed for that period.

The U.S. Trustee objects to the fee application as a whole based upon a lack of benefit to the estate, with the exception of categories nine and thirteen. The U.S. Trustee suggests that the Applicant's services have hindered the administration of the case and have been superfluous. Moreover, the U.S. Trustee suggests that any compensation allowed be reduced five percent. This reduction is recommended due to the Applicant's billing practice of minimum .25 hour increments, rather than in tenth of an hour increments, contrary to the local custom and practice followed by the Court. Furthermore, the U.S. Trustee recommends an additional ten percent reduction of fees because the Applicant failed to properly advise the Debtor of his duties under 11 U.S.C. § 521(4) and Bankruptcy Rule 4002(3). The U.S. Trustee objects to the application of the $10,000.00 additional retainer to any criminal work rendered by the Applicant because the statement disclosing the compensation paid referred only to civil bankruptcy work. The U.S. Trustee objects to the reimbursement of expenses in toto. The U.S. Trustee recommends an allowance of $33,019.75 for post-petition compensation and does not object to the fees charged for the pre-petition work.

The several objectors, especially Raleigh and Citibank, provided very detailed and specific objections. Rarely does the Court receive from the professionals who are intimately involved and familiar with a case, such particular and defined recommendations with actual dollar amounts specified. Under the Bankruptcy Code, the Court is removed from the case with regard to most administrative matters, but ironically, is required to evaluate fee applications. The assistance furnished by the objectors as well as the professionals representing the Applicant has made the Court's review of the fee application less difficult and time consuming.

## IV. DISCUSSION

### A. *STANDARDS APPLICABLE TO FEE APPLICATIONS*

Generally, professional persons seeking compensation from the estate must first be authorized to be employed under section 327 and Bankruptcy Rule 2014. Pursuant to section 330, authorized and employed professionals applying for fees must then demonstrate that their services were actual, necessary and reasonable. The legislative history of section 330 expressly notes the Court's correlative duty to closely examine the reasonableness and necessity of the fees incurred. S.Rep. No. 989, 95th Cong., 2d Sess. 40–41 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5825–5827. Bankruptcy Rule 2016(a), in turn, requires that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed.R.Bankr.P. 2016(a).

In addition, section 329 permits the bankruptcy court to review the fees of a debtor's attorney, paid during the year prior to the filing of the petition, for services rendered in contemplation of or in connection with the case. Section 329 empowers the bankruptcy court to order the return of excessive fees paid pre-petition. 11 U.S.C. § 329.

The burden of proof to show entitlement to the fees requested is on the Applicant. *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr.N.D.Ill.1987); *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr.N.D.Ill.1985). Moreover, the fee application must stand or fall on its own merits. *See In re Wildman*, 72 B.R. 700 (Bankr.N.D.Ill.1987). Even if no objections are raised to a fee application, the Court is not bound to award the fees sought, and in fact, has a duty to independently examine the reasonableness of the fees. *In re Wyslak*, 94 B.R. 540, 541 (Bankr.N.D.Ill.1988); *In re Chicago Lutheran Hospital Association*, 89 B.R. 719, 734–735 (Bankr.N.D.Ill. 1988); *Pettibone*, 74 B.R. at 299–300; *In re NRG Resources, Inc.*, 64 B.R. 643, 650 (W.D.La.1986). Moreover, fees for a debtor's attorney are properly payable out of

estate assets when a commensurate benefit to the estate is provided, but not for services which personally benefit only the debtor. *See In re Ryan,* 82 B.R. 929, 931–932 (N.D. Ill.1987). Absent a showing of benefit to the estate, a debtor's attorney will not be compensated for services which were duplicative of duties of the trustee or the trustee's counsel. *In re Marker,* 100 B.R. 569, 571 (Bankr.N.D.Ala.1989). Moreover, if an attorney's services have, in fact, obstructed or impeded the administration of the estate, those services are not compensable. *See In re Sandra Cotton, Inc.,* 91 B.R. 657, 659 (W.D.N.Y.1988).

Several courts have listed other factors to be considered when reviewing fee applications. These factors are set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). The twelve *Johnson* factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill required to perform the legal services properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Id.* at 717–719.

■ As a general rule, a debtor has no right to use estate assets to fund his criminal defense. *In re Duque,* 48 B.R. 965 (S.D.Fla.1984); *Official Committee of Disputed Litigation Creditors v. McDonald Invest., Inc.,* 42 B.R. 981 (N.D.Tex.1984); *In re Southern Commodity Corp.,* 85 B.R. 892 (Bankr.S.D.Fla.1988); *In re United Church of the Ministers of God,* 84 B.R. 50 (Bankr.E.D.Pa.1988); *In re Moore,* 57 B.R. 270 (Bankr.W.D.Okla.1986); *In re Tashof,* 33 B.R. 225 (Bankr.D.Md.1983); *In re Pajarito American Indian Art, Inc.,* 11 B.R. 807 (Bankr.D.Ariz.1981). Courts have rejected the argument that it was in the best interest of the estate to employ criminal counsel or to pay the cost of services relating to a debtor's criminal defense.

### B. *SUMMARY OF THE COMPENSATION REQUESTED*

The Applicant classifies the services into thirteen categories and substantially complies with the guidelines and format prescribed by Judge Grady in *In re Continental Illinois Securities Litigation,* 572 F.Supp. 931 (N.D.Ill.1983). The fee application has been carefully reviewed and consideration given to all the *Johnson* factors. The Applicant requests that the compensation be paid from the estate to cover the difference between the $184,502.04 sought for pre-petition and post-petition services and the $160,000.00 retainers received or $24,502.04.

The following is a list of the original amounts of compensation by category, the amount presently sought and the Applicant's voluntary reduction:

| | CATEGORY | ORIGINAL AMT. | PRESENT AMT. | REDUCTION |
|---|---|---|---|---|
| 1. | All Services Rendered Pre-petition | $82,218.39 | $82,218.39 | 0.00 |
| 2. | Employment of Professional Persons | 1,336.50 | 1,336.50 | 0.00 |
| 3. | Review Pleadings and Court hearings | 16,924.05 | 15,133.80 | 1,790.25 |
| 4. | Conferences or Telephone Calls | 10,037.50 | 8,340.75 | 1,696.75 |
| 5. | Review and Assemblage of Documents | 20,509.50 | 18,793.50 | 1,716.00 |
| 6. | Lender Liability Suit | 28,974.00 | 28,974.00 | 0.00 |
| 7. | Communications with Trustee and Counsel | 7,665.90 | 7,610.90 | 55.00 |
| 8. | Sale of Airplanes | 4,606.50 | 4,606.50 | 0.00 |

| CATEGORY | ORIGINAL AMT. | PRESENT AMT. | REDUCTION |
|---|---|---|---|
| 9. Sale of Douglas Dynamics | 163.90 | 163.90 | 0.00 |
| 10. Fifth Amendment and Related Matters | 14,976.75 | 6,713.00 | 8,263.75 |
| 11. Contempt of Court Issue | 9,183.55 | 9,183.55 | 0.00 |
| 12. Grand Jury Issues | 10,172.75 | 0.00 | 10,172.75[2] |
| 13. Preparation of the Fee Application | 1,427.25 | 1,427.25 | 0.00 |
| Total | $208,196.54 | $184,502.04 | $23,694.50 |

## C. COMPENSATION ALLOWANCE

### 1. Category One

■ Pursuant to this category, the Applicant seeks $82,218.39 for services rendered pre-petition. Citibank objects based upon a lack of benefit to the Debtor's estate. The U.S. Trustee states that the amount sought is subject to review by the Court under section 329 and that no allowance can be made prior to the Court's review thereof.

The Applicant submitted time sheet summaries for the work expended pre-petition. The Debtor's financial problems, which resulted in the involuntary petition, were serious and complex. He needed experienced and able attorneys to counsel him and provide many legal services in a relatively short time. The Court is satisfied that the work performed was not excessive or unreasonable. Thus, the Court will not order disgorgement of the fees previously paid for services rendered in this category.

### 2. Category Two

■ The Applicant seeks $1,336.50 in fees for services expended in connection with its employment and withdrawal from representation of the Debtor. The U.S. Trustee raised a general objection based upon a lack of benefit to the estate. Upon review of the time entries which total 6.5 hours, the Court finds that the fees sought are reasonable, necessary and conferred a benefit upon the estate. The time expended for preparing and presenting the required pleadings and affidavits was not excessive. Therefore, the Court hereby allows in full the fees requested in this category.

### 3. Category Three

■ Pursuant to category three, the Applicant seeks $15,133.80 [3] in compensation for services provided in connection with making court appearances and reviewing, drafting, editing and revising pleadings. Raleigh suggests that the Court allow only $14,481.50 because some of the services relate to the Debtor's criminal defense. The U.S. Trustee makes no specific suggestion in this category. Citibank recommends an award of $14,102.00.[4] It claims that some of the work was duplicative of that provided by Raleigh in his capacity as trustee. Moreover, Citibank objects to some services relating to the Debtor's criminal defense. Additionally, it states that some of the services rendered benefitted the related corporate estates and not the Debtor's estate.

Upon review of the entries from the time sheet summaries, the Court finds that most of the services performed were reasonable and necessary. The Applicant's court appearances, pleadings and other work performed facilitated the administration of the estate. The Court, however, disallows several entries because they relate, in part, to

---

**2.** Because the Applicant no longer seeks compensation pursuant to category twelve, the Court will not address the objections raised thereto.

**3.** The Applicant originally requested $16,924.05, but voluntarily reduced the fees sought in this category by $1,790.25.

**4.** The Applicant contends that the amount recommended by Citibank should be $14,332.50 due to a claimed duplication in the suggested disallowance proposed.

criminal defense work. These entries, which are comprised of phone calls, correspondence, meetings, document preparation and review, and court hearings are lumped together. Thus, it is impossible for the Court to clearly discern the compensable time from the non-compensable time. Accordingly, the following entries are disallowed:

| Date | Professional | Time Expended | Hourly Rate | Disallowance |
|------|--------------|---------------|-------------|--------------|
| 05/10/89 | JKK | 2.75 hrs. | $187.00 | $ 514.25 |
| 05/18/89 | JKK | 1.00 hrs. | 187.00 | 187.00 |
| 05/19/89 | JKK | 3.00 hrs. | 187.00 | 561.00 |
| Total Disallowance | | | | $1,262.25 |

Hence, the Court hereby awards compensation pursuant to this category in the amount of $13,871.55.

### 4. Category Four

■ The Applicant seeks reduced fees in the amount of $8,340.75 for services expended relating to general bankruptcy issues. Raleigh suggests that the Applicant should receive $8,098.75 because some of the time includes non-compensable services relating to criminal matters. Citibank objects on the basis that the Applicant spent time conferring with the trustee for the corporate cases and his counsel. It suggests an award of only $7,326.00.

The Applicant, as counsel to the Debtor, engaged in numerous conferences and telephone calls with not only Raleigh, his counsel, and various creditors' counsel, but also the trustee for the corporate cases and his counsel. Due to the fact that the Debtor was the sole equity holder in the corporate cases and was asserting his Fifth Amendment privilege, substantial amounts of conferencing was both necessary and reasonable given the need for discovery and information sought by all interested parties. The trustee for the corporate cases has filed claims for those estates in the instant case, as have the objectors. Thus, communications between the Applicant and the trustee in the corporate cases and his professionals, at least indirectly related to, and had some impact on the Debtor's estate. Due to the close interrelationship among the estates, it would be unnecessarily harsh to disallow reasonable compensation for the Applicant's time spent with the corporate trustee and his professionals, in light of the Applicant's voluntarily reduction in this category which covers the non-compensable time relating to criminal defense matters. Accordingly, the Court will allow the reduced fees sought in this category in the sum of $8,340.75.

### 5. Category Five

■ The Applicant seeks $18,793.50 [5] in fees for time expended reviewing and assembling voluminous documents. Raleigh has objected to some of the fees on the basis that the time relates to meetings with the Debtor's criminal counsel as well as assisting him in reviewing and analyzing the Debtor's records. Additionally, Raleigh objects to the award of fees for services rendered after the Applicant's withdrawal on September 18, 1989, other than services provided in connection with the preparation of the fee application. Raleigh recommends an award of $14,265.90. Citibank has objected to the fees under this category on the basis that the Applicant failed to apportion the fees among the several estates as Citibank claims that some of the services benefitted the corporate cases. Similarly, Citibank recommends an award of $14,265.90. The U.S. Trustee objects to the award of any compensation in this category. He argues that these services were for Raleigh to perform, not the Applicant.

5. The original amount sought was $20,509.50 which was reduced by $1,716.00 to the present request. The reduction consisted of twenty-six hours of time expended on criminal matters.

The Applicant was not authorized by the Court to perform such work as special counsel under section 327(e). The Applicant's services, however, were of substantial benefit to all the estates, the case trustees and the creditors. The Applicant created a document depository in which thousands of records were organized, reviewed, abstracted, collated and categorized. Thus, substantial compensation in this category is appropriate.

The Applicant's withdrawal on September 18, 1989, however, warrants disallowance of several entries. The Court will not award compensation for services rendered post-withdrawal, other than those services performed in connection with the preparation of the fee application. Accordingly, the following entries are disallowed:

| Date | Professional | Time Expended | Hourly Rate | Disallowance |
|---|---|---|---|---|
| 09/19/89 | LL | .50 hrs. | $ 66.00 | $ 33.00 |
| 09/26/89 | JH | 1.50 hrs. | 198.00 | 297.00 |
| 09/28/89 | JH | 1.00 hrs. | 198.00 | 198.00 |
| 10/03/89 | JH | .25 hrs. | 198.00 | 49.50 |
| Total Disallowance | | | | $577.50 |

Moreover, the Court disallows the entries pertaining to services the Applicant provided to the Debtor's criminal counsel which do not clearly relate to these bankruptcy proceedings, but can logically be inferred to relate to the defense of the criminal proceedings then pending against the Debtor.

| Date | Professional | Time Expended | Hourly Rate | Disallowance |
|---|---|---|---|---|
| 04/24/89 | LL | 2.50 hrs. | $ 66.00 | $ 165.00 |
| 04/27/89 | LL | 5.00 hrs. | 66.00 | 330.00 |
| 05/15/89 | LL | 2.50 hrs. | 66.00 | 165.00 |
| 05/18/89 | LL | 8.25 hrs. | 66.00 | 544.50 |
| 05/19/89 | LL | 2.00 hrs. | 66.00 | 132.00 |
| 05/24/89 | LL | .50 hrs. | 66.00 | 33.00 |
| 06/08/89 | LL | 2.75 hrs. | 66.00 | 181.50 |
| 08/17/89 | LL | 3.75 hrs. | 66.00 | 247.50 |
| 08/23/89 | LL | .50 hrs. | 66.00 | 33.00 |
| 08/24/89 | LL | 2.50 hrs. | 66.00 | 165.00 |
| Total Disallowance | | | | $1,996.50 |

Therefore, the Court hereby awards the Applicant compensation in this category in the sum of $16,219.50.

### 6. Category Six

The Applicant seeks $28,974.00 pursuant to this category for services expended in connection with potential lender liability claims. The Debtor maintained that he possessed various lender liability claims against the Bank of New England and Connecticut Bank. The Applicant's services were expended investigating and developing those claims. Raleigh has objected to the fees *in toto*. Raleigh claims that it is his statutory duty as representative of the estate to investigate and analyze all claims by and against the estate. Moreover, Raleigh notes that the Applicant was not appointed special counsel to pursue or investigate these claims pursuant to section 327(e). In addition, Raleigh alleges that it is impossible to determine whether the services were of any benefit to the estate or whether such services were duplicative of work performed by him as trustee. Ra-

leigh further asserts that many of the services were actually rendered in connection with the Debtor's criminal defense. The U.S. Trustee has objected to the allowance of any fees on the basis that such investigation was for Raleigh as trustee to pursue and was not authorized by the Court.

The Court will not award any compensation for the services rendered in this category. The Applicant was not authorized pursuant to section 327(e) to act as special counsel to pursue or investigate such claims. This investigation was among the statutory duties enumerated in sections 704 and 1106 for Raleigh to perform. Moreover, Raleigh and his professionals made such investigations and have settled and released such potential claims by Order dated May 4, 1990. The settlement of the potential lender liability claims occurred without objection, after notice to all creditors and other interested parties and an evidentiary hearing. As the testimony indicated, any such lender liability claims were of questionable value and subject to vigorous defenses including the unclean hands defense arising from the Debtor's prepetition acts, omissions and representations. The Applicant's services performed in this category were unauthorized, duplicative and of no benefit to the estate. Therefore, the services are not properly compensable.

### 7. Category Seven

Pursuant to this category, the Applicant seeks reduced compensation in the amount of $7,610.90 [6] for services rendered relating to communications with Raleigh and his counsel. Raleigh has not objected to the requested fees, although he notes that seven of the seventeen entries do not provide a description of the topics discussed during these communications, and therefore, are technically deficient. Citibank, however, objects to the amount sought based on a lack of benefit to the estate. It recommends an allowance of $4,198.15.

For the same reasons as discussed in category four, the Court finds that the communications between the Applicant and Raleigh and his counsel were necessary, reasonable, and thus compensable. Consequently, the Court hereby awards fees in this category in the sum of $7,610.90.

### 8. Category Eight

The Applicant seeks compensation in this category in the amount of $4,606.50 for time expended in connection with the sale of certain airplanes. Raleigh supports the request for fees. He notes that the Applicant contacted dozens of potential purchasers which precipitated the sale of the aircraft. Therefore, Raleigh claims that the Applicant's effort in this category produced a demonstrable benefit to the estate.

Citibank has raised an objection based upon a duplication of efforts on the part of the Applicant and Raleigh. Citibank alleges that seventy percent of the work in this category was performed subsequent to the appointment of Raleigh. Citibank argues that services expended after March 19, 1989 are largely duplicative of the work provided by Raleigh. It objects to the award of any fees in this category after March 19, 1989, and recommends an allowance of only $1,980.50. The U.S. Trustee has objected based upon a lack of benefit to the estate.

The Court will allow all the compensation in this category as a demonstrable benefit has been produced; namely the airplanes were sold for sums exceeding $4,000,-000.00. Raleigh admits that the Applicant's assistance was instrumental to the successful sales of the aircraft. The Court notes that this category illustrates the significance of the eighth *Johnson* factor which is often overlooked, but may be the most important—the amount of fees involved is relatively small, but the result obtained for the estate was relatively great. Consequently, the Court hereby allows compensation in the amount of $4,606.50.

### 9. Category Nine

Pursuant to this category, the Applicant seeks fees in the amount of $163.90 for the

6. This figure represents a reduction in the sum of $55.00 for work performed on criminal matters.

sale of Douglas Dynamics, a non-debtor subsidiary of significant value to the Debtor's estate. No objections to this category have been raised. To the contrary, Raleigh supports the request and states that it was the Applicant who initially commenced the discussions for the sale of the company. After review, the Court hereby allows the fees as same are reasonable, necessary and have benefitted the estate.

### 10. Category Ten

The Applicant seeks compensation in the amount of $6,713.00 [7] for services in connection with the Debtor's exercise of his privilege under the Fifth Amendment and other related matters. Raleigh and Citibank object to the entire amount sought on the basis that time expended in relation to defending the Debtor in criminal matters is not compensable from the estate. The U.S. Trustee also objects to the award of any fees in this category on the basis that no benefit has been conferred upon the estate.

The Court hereby disallows all of the compensation. Based on the cited authorities discussed in section IV. A, the Court will not award fees, payable from the estate assets, for services performed incidental to the Debtor's criminal defense. Compensation from the estate will be allowed for those services expended in connection with the bankruptcy proceedings which are authorized, reasonable, necessary and benefit the estate. The services in this category failed to produce any benefit to the estate. Rather, the work was for the sole benefit of the Debtor himself. The privilege asserted was personal to the Debtor and exercised for his protection, not for the benefit of the estate. Hence, none of the fees are properly compensable.

### 11. Category Eleven

Pursuant to this category, the Applicant seeks compensation in the amount of $9,183.55 for time rendered in connection with contempt of court issues. The U.S. Trustee, Raleigh and Citibank object to the entire amount of fees on the basis that the matter involved a civil contempt of

court, directed at the Debtor's criminal counsel, and produced no benefit to the estate.

The Court will not award any compensation in this category. The matter involved criminal defense counsel's non-compliance with the required disclosures of section 329 and Bankruptcy Rule 2016(b), after counsel appeared and participated in these proceedings by filing pleadings and making vigorous argument on the Debtor's behalf. The Applicant claims that the services were rendered in an attempt to protect the identity of parties who were willing to finance the Debtor's prosecution of the lender liability suit. However, that potential cause of action was for Raleigh to pursue, not the Debtor. Consequently, the services provided by the Applicant did not produce any benefit to the estate. Rather, the services were for the principal benefit of the Debtor's criminal counsel and may have been of incidental benefit to the Debtor. Thus, the Court will not compensate the Applicant for the time spent pursuant to the civil contempt of court matters.

### 12. Category Thirteen

The Applicant seeks compensation in the amount of $1,427.25 for the preparation of the fee application. No objections to this category have been raised. The Applicant expended 7.25 hours in this category which the Court finds reasonable. The fee application and the supplement thereto are in substantial conformity with the *Continental* guidelines. Such compliance facilitated the review of the fee application by the Court, other interested parties, the objecting creditors, Raleigh and the U.S. Trustee. As a result, under *Wildman, Pettibone,* and other decisions followed by the Court, such services are properly compensable from the estate and are hereby allowed.

### 13. Recapitulation of the Allowed Fees

The following is a list by category of the requested compensation and the amounts allowed:

---

**7.** The Applicant has voluntarily reduced the original request by $8,263.75. This reduction

reflects work expended on criminal defense matters.

| CATEGORY | REDUCED REQUEST | AMOUNT ALLOWED |
|---|---|---|
| 1 | $ 82,218.39 | $ 82,218.39 |
| 2 | 1,336.50 | 1,336.50 |
| 3 | 15,133.80 | 13,871.55 |
| 4 | 8,340.75 | 8,340.75 |
| 5 | 18,793.50 | 16,219.50 |
| 6 | 28,974.00 | 0.00 |
| 7 | 7,610.90 | 7,610.90 |
| 8 | 4,606.50 | 4,606.50 |
| 9 | 163.90 | 163.90 |
| 10 | 6,713.00 | 0.00 |
| 11 | 9,183.55 | 0.00 |
| 12 | 0.00 | 0.00 |
| 13 | 1,427.25 | 1,427.25 |
| TOTAL: | $184,502.04 | $135,795.24 |

### D. *BILLING PRACTICE OF THE APPLICANT*

Several of the objectors have expressed concern over the Applicant's billing practice, which charges all time expended in minimum .25 hour increments. Bankruptcy Rule 2016 requires actual time expended to be detailed. Thus, this type of billing practice is unacceptable. *See Pettibone,* 74 B.R. at 302; *Wildman,* 72 B.R. at 708–709. Billing in this manner potentially inflates the charges to the estate, especially when telephone calls are being recorded. Judge Schmetterer, in citing *In re Sapolin Paints, Inc.,* 38 B.R. 807, 814 (Bankr.E.D.N.Y.1984) noted, "[i]f very short phone calls are routinely recorded as taking 12 or 15 minutes at rates ranging from $110.00 to $150.00 per hour and the attorney makes a number of calls, the distortion in the hours claimed and the cost to the estate are substantial." *Id.* at 709.

The Court agrees with this logic which is equally applicable to all legal services performed. It is not objectionable to use .10 hour increments as the minimum unit charged for legal services. The Court has previously reduced compensation in other unrelated cases by as much as five percent to adjust for the inflationary effect of billing in .25 hour increments. The Applicant has already made a significant reduction in its request in light of the objections filed. The Court will reduce the allowed amount of compensation, namely $135,795.24, by approximately 4.26 percent ($5,795.24),

which results in a final allowance of $130,-000.00 for both the pre-petition and post-petition services.

### E. *APPLICANT'S ROLE IN THE FAILURE OF THE DEBTOR TO TURN OVER CERTAIN ASSETS TO RALEIGH*

Both the U.S. Trustee and Raleigh raise the further point that after Raleigh's appointment, the Debtor failed to immediately turnover substantial amounts of cash kept secreted and discovered only after a search by the Federal Bureau of Investigation. The U.S. Trustee suggests an additional ten percent discount from the allowed fees is appropriate for the Applicant's alleged failure to properly counsel the Debtor regarding his duties under section 521(4) and Bankruptcy Rule 4002(3). Raleigh argues that the Court would be justified in disallowing all compensation due to the Debtor's conduct concerning the secreted cash. The cash sums were collected pre-appointment at the Applicant's advice. Raleigh cites case authority for the unquestioned proposition that a client-debtor who follows his attorney's advice not to turnover estate assets can be appropriately denied a discharge under section 727(a)(2)(A).

The evidence adduced at the hearing was that the cash was assembled and secreted on the Applicant's advice, to prevent bank

accounts from being garnished by energetic judgment creditors of the Debtor. Furthermore, a member of the Applicant's firm testified that the Applicant immediately advised the Debtor of Raleigh's appointment and the legal effect thereof. The extent of the funds on hand were unknown to the witness. The Debtor was also informed of a meeting to be sought between the Applicant and Raleigh to discuss a budget, to allow the Debtor to retain cash for his personal living expenses while the case was in a Chapter 11 posture. The witness admitted he did not advise the Debtor to wait for a meeting before turning over all assets to Raleigh.

There has been no testimony or other evidence presented to the effect that the Applicant advised the Debtor not to turnover the cash or to continue to secret it and conceal it from Raleigh. Section 521(4) and Bankruptcy Rule 4002(3) prescribe certain non-delegable duties of the Debtor. Denial of discharge is the appropriate remedy for the Debtor's wrongful acts and omissions if clearly and convincingly proven.

Absent a showing that the Applicant actually advised the Debtor to conceal the hoarded cash from Raleigh, there is an insufficient basis upon which to further reduce or entirely disallow the compensation. The attorney-client relationship is sacred to the Court. Communications between such parties, specifically an attorney's legal advice to his client, are privileged, unless the client waives the privilege. The Debtor has not testified that he was advised by the Applicant to conceal the hoarded cash from Raleigh. Thus, the Court is not privy to what other advice was given than that disclosed at the hearing on the fee application. Therefore, such alleged sins of the Debtor cannot be properly visited upon the attorney or in this matter, the attorney's fees. Consequently, the Court will not further reduce or entirely disallow the compensation. The Court has already made a sufficient reduction of the fees based upon ample precedent and authority.

## F. APPLICATION OF THE RETAINERS

■ The Applicant desires to apply against the criminal defense and related services it performed, the $10,000.00 portion of the retainers paid it by the Debtor's criminal counsel. Retainers paid to a debtor's counsel from property of the estate are subject to judicial review. *In re Burnside Steel Foundry Co.*, 90 B.R. 942, 944 (Bankr.N.D.Ill.1988); *In re Wyslak*, 94 B.R. 540, 542 (Bankr.N.D.Ill.1988); *In re Chapel Gate Apts. Ltd.*, 64 B.R. 569, 574 (N.D.Tex.1986).

The Applicant cites *In re Hargis*, 887 F.2d 77 (5th Cir.1989), for the proposition that because that payment did not come from the Debtor and was not part of the estate, the Applicant can apply such funds in any manner it chooses. In *Hargis*, the Fifth Circuit reversed lower court decisions ordering disgorgement of attorneys' fees because the retainer was paid out of life insurance proceeds, not part of the estate under section 541(a)(5)(C). Thus, the disputed fund was not appropriately subject to the trustee's avoidance powers for certain post-petition transfers violative of section 549(a). The *Hargis* court noted that the power of the bankruptcy court to regulate professional services is geared toward protecting the rights of creditors via protection of the estate. The court concluded that payment of the claimed attorneys' fees out of non-estate assets would free-up estate assets for payment to the other creditors and thus allows each to take a correspondingly larger slice of the bankruptcy pie. Moreover, the court noted that Congress has not established sweeping regulatory power over non-estate property.

The Applicant's supplemental statement disclosed that the additional $10,000.00 was paid in connection with matters set forth in its earlier statement. The initial statement disclosed the original $150,000.00 retainer. The U.S. Trustee argues that the Applicant effectively earmarked the funds for payment of allowed bankruptcy services and should not be permitted to apply the $10,000.00 against the disallowed services relating to criminal defense work. Section

329(b)(1)(A) allows the bankruptcy court to order disgorgement to the estate of excessive fees paid to a debtor's attorney if the property transferred to the attorney would have been property of the estate. Section 329(b)(1)(B) reaches the same result if the property transferred was to be paid by or on behalf of the debtor under a Chapter 11, 12, or 13 plan. In the alternative, section 329(b)(2) allows the Court to order disgorgement of excessive fees to the entity that made such payment.

It is undisputed that the supplemental $10,000.00 paid the Applicant came from the Debtor's criminal defense counsel. Thus, it does not appear to be property of the estate under section 541. Hence, section 329(b)(1)(A) is inapplicable, and the Court could not properly order disgorgement of the excess to Raleigh. Moreover, no reorganization plan was ever filed under which the sum in question was to be paid. Therefore, section 329(b)(1)(B) is inapplicable. Pursuant to section 329(b)(2), the Court could order disgorgement of the supplemental retainer to the remitter, the Debtor's criminal counsel. Such exercise, however, would be of no benefit to the estate. The Applicant would likely present its bill for the disallowed services it rendered for the Debtor's criminal defense work to the Debtor's criminal counsel. He in turn might either pay the sum over to the Applicant, or refuse to do so and trigger additional litigation in some other forum. Such result serves no real purpose other than engendering additional delay and expense over undisputed services actually rendered, but not appropriately compensable by the Court in connection with the bankruptcy case. The discretionary authority vested in the Court under section 329(b) regarding this sum is more wisely utilized by its non-exercise under these circumstances. The disgorgement ordered under section 329 is limited to the $150,000.00 paid to the Applicant by the Debtor.

## G. *REIMBURSEMENT OF EXPENSES*

▉ The Applicant seeks reimbursement of expenses in the sum of $7,485.05. The Applicant bears the burden of establishing that it is entitled to certain expenses which must be fully and clearly described. *In re Convent Guardian Corp.*, 103 B.R. 937, 939 (Bankr.N.D.Ill. 1989); *In re Affinito & Son, Inc.*, 63 B.R. 495, 497 (Bankr.W.D.Pa.1986). The Court will not assume any expense is necessary. *See In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr.N.D.Ill.1985). An expense is necessary if it was incurred because it was required to accomplish the proper representation of the client. *In re Wildman*, 72 B.R. 700, 731 (Bankr.N.D.Ill.1987).

Both the U.S. Trustee and Raleigh object to the expenses requested. They claim that the fee application fails to identify expenses by category. Moreover, they assert that due to the fact that some of the categories should be denied in full, all expenses must be denied. Furthermore, the U.S. Trustee claims that the expenses are so lacking in detail that they cannot be reimbursed under the standards followed by the Court.

Although many of the expense entries do not fully comply with the standards set forth in *Convent Guardian*, such as Lexis and Westlaw charges and local delivery charges, the Court will not require the Applicant to further supplement the fee application. These expenses comprise the bulk of the expenses sought. In the future, however, the Applicant must describe, in greater detail, the expense entries so as to eliminate the uncertainty created by the lack of specificity. The Court will allow reimbursement of expenses in the amount of $6,597.33.

▉ Generally, the Court will not authorize reimbursement for meals unless out-of-town travel is involved. *In re Continental Illinois Securities Litigation*, 572 F.Supp. 931, 934 (N.D.Ill.1983). This case did not necessitate out-of-town travel by the Applicant. The Applicant failed to show the compelling necessity for the meal charges which are normally personal expenditures borne by the consuming professional. Accordingly, the Court will not allow the request for meal reimbursement in

the amount of $198.58.[8]

Moreover, secretarial overtime in the sum of $472.00 will not be reimbursed.[9] Expenses which are overhead are not compensable because they are built into the normal hourly rate charged by the billing professional. *See Convent Guardian* 103 B.R. at 939; *Wildman*, 72 B.R. at 731. Overhead expenses include "all continuous administrative or general costs or expenses incident to the operation of the firm which cannot be attributed to a particular client or cost". *In re Thacker*, 48 B.R. 161, 164 (Bankr.N.D.Ill.1985), *quoting In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557, 584 (Bankr.D.Utah 1985). Absent extraordinary circumstances, which have not been shown here, the Court views secretarial overtime as an overhead expense and thus non-compensable.

Furthermore, the Applicant's withdrawal from the case on September 18, 1989, warrants disallowance of post-withdrawal expenses in the amount of $164.10.[10] Additionally, the $53.04 car rental expense on 03/31/89 is disallowed for a lack of specificity as required by *Convent Guardian.* Consequently, the Court hereby authorizes partial reimbursement of expenses in the amount of $6,597.33.

## V. CONCLUSION

For the foregoing reasons, the Court hereby allows Rudnick & Wolfe compensa-

---

**8.** The following is a list of the disallowed meal expense entries:

| Date | Description | Disallowance |
|------|-------------|-------------:|
| 03/20/89 | Lunch for S. Schwab and five people | $ 45.04 |
| 03/20/89 | Lunch for D. Missner and four people | 18.68 |
| 04/11/89 | Lunch for D. Missner | 28.10 |
| 04/24/89 | Lunch for L. Inskeep and four people | 22.79 |
| 04/24/89 | Lunch for L. Inskeep and seven people | 51.84 |
| 06/22/89 | Lunch for D. Missner and six people | 32.13 |
| | Total Disallowance | $198.58 |

**9.** The following entries are disallowed:

| Date | Description | Disallowance |
|------|-------------|-------------:|
| 03/31/89 | Secretarial overtime | $ 60.00 |
| 05/15/89 | Secretarial overtime | 48.00 |
| 05/15/89 | Secretarial overtime | 120.00 |
| 06/15/89 | Secretarial overtime | 48.00 |
| 06/15/89 | Secretarial overtime | 60.00 |
| 06/15/89 | Secretarial overtime | 60.00 |
| 08/15/89 | Secretarial overtime | 22.00 |
| 08/15/89 | Secretarial overtime | 30.00 |
| 08/15/89 | Secretarial overtime | 24.00 |
| | Total Disallowance | $472.00 |

**10.** The following post-withdrawal expenses are disallowed:

| Date | Description | Disallowance |
|------|-------------|-------------:|
| 10/01/89 | Delivery to various places | $153.10 |
| 10/04/89 | Delivery to Tom Durkin | 5.00 |
| 10/12/89 | Delivery to Louise Lovinson | 5.00 |
| 10/16/89 | Telecopy expense for 9/30/89 through 10/06/89 | 1.00 |
| | Total | $164.10 |

tion in the amount of $130,000.00 and authorizes reimbursement of expenses in the amount of $6,597.33 for a total of $136,-597.33. The Applicant previously received retainers in the total amount of $160,-000.00. Ten Thousand ($10,000.00) Dollars of that total was not property of the estate and the Court declines to order disgorgement of that sum. The Applicant is hereby authorized to apply the original $150,000.00 retainer against the fees awarded. The balance of the retainer totalling $13,402.67 is further ordered to be disgorged and paid to Thomas E. Raleigh as trustee of the estate within ten days hereof.

This Opinion is to serve as findings of fact and conclusion of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

See written Order.