In re Louis E. & Margaritte E. DAY, Alberta M. Bratcher, Ronald Wayne Smith, Randy R. & Kristie Mae Reynolds, Donald F. & Patty Lynn Sams, Donald Harvey Toppel, Jr., David E. Parnell, Allen W. & Cynthia A. Massey, John T. Hayes, Carolyn Kay Perry–Senters, Kurt W. & Brandy Halleman, Dennis Robert Minick, Gerald H. & Pamela M. Pittman, Bryan K. & Cynthia L. Renfro, Orris James & Olivia Lynn Lilly, Debtors.

Bankruptcy Nos. 96–72774 to 96–72779, 96–73149, 96–73198 to 96–73204, 96–73223.

United States Bankruptcy Court, C.D. Illinois.

March 6, 1997.

Peter F. Geraci, Chicago, IL, for Debtors.

Sabrina M. Petesch, Peoria, IL, for U.S. Trustee.

## OPINION

LARRY LESSEN, Bankruptcy Judge.

The issue before the Court is whether the fees charged by a law firm for simple, routine Chapter 7 cases exceed the reasonable value of such services pursuant to 11 U.S.C. § 329(b).

Peter Francis Geraci obtained his license to practice law in the State of Illinois in 1974. He is also admitted to practice in five other states, several federal district courts, and two

circuit courts. His main office is in Chicago, Illinois. In addition, he maintains satellite offices in Wisconsin, Indiana, and the Chicago suburbs. He has recently expanded his practice to the Central District of Illinois.

Mr. Geraci concentrates his practice of law in two areas: consumer Chapter 7 bankruptcy and personal injury. Mr. Geraci's firm filed 6, 000 bankruptcy cases in 1996, 97% of which were under Chapter 7 of the Bankruptcy Code. He claims that his "firm files more bankruptcy cases than any other in the nation, and therefore, more than any other firm in the world." He expects to do 10% to 15% of consumer bankruptcies in Central Illinois in 1997.

Mr. Geraci's firm employs 25 attorneys. Two of those attorneys, Rhonda Sue Grey and Steven Diamond, appeared with Mr. Geraci at a hearing on January 14, 1997. Ms. Grey has been practicing law for less than six months; Mr. Diamond has been practicing law for less than five years. Overall, six or seven of the attorneys in the Geraci firm have less than two years of experience, and most have less than five years of experience. Mr. Geraci could only identify three attorneys in his firm with more than five years of experience, and he could not even name one of them other than to describe him as someone from Wisconsin with 13 years of experience.

Mr. Geraci obtains his bankruptcy clients through referrals and television advertising. In the fall of 1996, Mr. Geraci began running his television ads on local television stations. The 15 cases involved in this proceeding were filed on October 18, November 26, or December 2 of 1996. The fees charged in these cases range from one at $850, three at $895, five at $995 or $1000, four at $1095 or $1100, and two at $1195. The United States Trustee believes that these fees are excessive, and filed a motion for Mr. Geraci to show cause why the fees charged in these cases is reasonable. The United States Trustee requests that any excessive fees in the no asset cases should be returned to the Debtors.

█ Mr. Geraci is a strong believer in the free market. He believes that the market is capable of determining attorney's fees and

that the United States Trustee and the Bankruptcy Court should not interfere with the fees mutually agreed upon by the Debtors and Mr. Geraci. The problem with Mr. Geraci's argument is that it is based upon the fallacy that the United States has a totally free market, when in fact what we have is a regulated free market. Various federal and state agencies regulate all aspects of commerce with rules and regulations, including laws protecting consumers and the environment, regulating employer-employee relationships, antitrust activities, and securities trading. In the bankruptcy context, Congress enacted 11 U.S.C. § 329 to prevent overreaching by a debtor's attorney and to protect the creditors. H.R. Rep. No. 595, 95th Cong. 1st Sess. 329 (1977), U.S.Code Cong. & Admin. News pp. 5963, 6285; S.Rep. No. 989, 95th Cong.2d Sess. 39–40 (1978), U.S.Code Cong. & Admin. News pp. 5787, 5825–5826. Section 329 provides as follows:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

█ Section 329(b) permits the Court to deny compensation to an attorney, to cancel an agreement to pay compensation, or to

order the return of compensation paid if the compensation exceeds the reasonable value of the services provided. A determination of reasonableness under § 329 is largely a factual inquiry made on a case-by-case basis. Factors to be considered in determining reasonable compensation include the time spent, the intricacy of the questions involved, the size of the estate, the rates typically charged by the local bar, the experience of the attorney, the opposition encountered, and the results obtained. *In re Swartout*, 20 B.R. 102 (Bankr.S.D.Ohio 1982); *In re J.J. Bradley & Co.*, 6 B.R. 529 (Bankr.E.D.N.Y.1980). The burden of proof on all issues related to fees is on the attorney seeking the fees. *NAACP v. City of Evergreen*, 812 F.2d 1332, 1338 (11th Cir.1987).

Five attorneys from the Springfield Division of the Central District of Illinois testified as to the rates typically charged by the local bar for Chapter 7 cases. Alan Bourey has been practicing bankruptcy law in Decatur, Illinois, for 20 years. He concentrates in Chapter 7 and 13 work, and he works almost exclusively on behalf of debtors. He handles between 150 and 200 bankruptcy cases every year, and he is familiar with fees in the Decatur area. The average fee for a Chapter 7 case is $400 in the Decatur area. Fees range from a low of $250 to the high of $1450 charged by Mr. Geraci. Mr. Bourey charges $250 for a single person with no reaffirmations and $300 for a couple with no reaffirmations. Reaffirmations are billed at $50 each with a cap at $150 for three or more reaffirmations. If a business is involved, the fees are higher. Mr. Bourey's fees do not generally increase if there is an asset. Adversaries are billed at $150 if settled or resolved, plus $100 per hour. Mr. Bourey testified that his fees are based on competition and his hourly rate.

Mr. Bourey reviewed the 15 cases at issue in this proceeding. He described the cases as unusually easy. None of the cases would be undesirable. He stated that he would charge between $250 and $500 for these cases. He described Mr. Geraci's fees as unreasonably high.

George Chesley has been practicing law in Bloomington, Illinois, for 24 years. He has concentrated on debtor-creditor law for the last 15 years. He does Chapter 7s, 11s, and 13s. In 1996, he filed 75 Chapter 7 consumer cases. He testified that fees for Chapter 7 cases in the Bloomington area range from $300 to $500. He charges a flat fee of $475 for a Chapter 7 case, and this fee includes reaffirmations and redemptions. Adversaries are billed at $120 per hour. He arrived at these fees based on his many years of experience and conversations with clients and other lawyers.

Mr. Chesley reviewed the 15 cases involved in this proceeding. He stated that he found nothing novel or complex in any of them. He would not have turned down any of these cases. He opined that an appropriate fee in these cases would be in the range between $300 and $500, with the exception of the *Pittman* case which has 12 secured creditors and for which he would have charged $575. He described Mr. Geraci's fees as excessive.

Lars Eric Ostling has been practicing bankruptcy law for 20 of the 22 years that he has practiced law. His main office is in Bloomington, and he also maintains offices in Pontiac, Lincoln and Decatur. He files between 250 and 300 bankruptcy cases a year. Most of his cases are filed under Chapter 7, but he also does some Chapter 13 work and two or three Chapter 11s every year. He does not represent creditors. He testified that he charges between $350 and $400 for Chapter 7 consumer work, depending on the number of reaffirmations. He charges an additional $150 for cases in Pontiac which he described as necessary to account for travel time, but he only charges $250 for cases in Decatur because of the lower overhead in Decatur.

Mr. Ostling did not find anything novel, complex, or undesirable in any of the cases at issue. He spotted a potential substantial abuse problem under 11 U.S.C. § 707(b) in *Pittman*, and he was not sure why Mr. Geraci's clients were intending to reaffirm on unsecured credit card debt as indicated in their Statements of Intention. He thought that Mr. Geraci's fees were high.

William Krajec has been licensed to practice law since 1968, and has practiced bankruptcy law for the last 21 years, the last 20 of them in the Central District of Illinois. He represents debtors exclusively and concentrates on Chapter 7s and 13s. Last year he filed 22 bankruptcy cases a month. He is familiar with fees in the Springfield area and described his own fees as being in the lower range. He charges $325 for a case with no reaffirmations or lien avoidances and $375 for cases with reaffirmations or lien avoidances. The fee is the same whether there are assets, priority debt, or the case is filed on an emergency basis. His hourly rate is $95 per hour. He determined his fees based on competition.

Mr. Krajec testified that his fees would have been as quoted above for the cases at issue, with the possible exception of the *Day* case. The Debtors' bankruptcy schedules in *Day* showed substantial equity in real estate. Mr. Krajec stated that if the Debtors wanted to retain this property he would have steered them to a Chapter 13 for which he would have charged $800. If he took *Day* as a Chapter 7, his fee would have been $375.

John Narmont has been practicing bankruptcy law in Springfield and Auburn for 30 years. He does Chapter 7s, 12s, and 13s. In 1996 he filed 320 bankruptcy cases. He does very little work for creditors. He is familiar with fees for Chapter 7 cases in the area, and they range from $350 to $600. He charges a flat fee of $400. This fee includes reaffirmations and lien avoidances. Mr. Narmont's fee does not change if assets are involved.

Mr. Narmont reviewed the instant cases, and he did not find anything novel, complex or undesirable about the cases. He thought that a $400 flat fee would be reasonable in all of the cases. He expressed a concern that the schedules in some of the cases showed an intent to reaffirm on unsecured credit card debt.

Mr. Geraci discounted the testimony from the five attorneys. He described this testimony as being of "limited evidentiary value" because fees in this area are "artificially depressed," but he could not explain what was "artificial" about the fees.

Mr. Geraci emphasized that attorney's fees for Chapter 7 cases have been stagnant for the last 15 to 20 years. All of the attorneys who testified agreed with Mr. Geraci that they are charging about the same for Chapter 7 cases that they charged 15 to 20 years ago. Mr. Geraci explained that this was because the lawyers do not value themselves as attorneys and they are afraid to raise fees. More satisfactory explanations were offered by the other witnesses. Mr. Chesley pointed to the Supreme Court's decision to permit lawyers to advertise as promoting competition between lawyers. All of the attorneys agreed that improvements in technology have made the preparation of bankruptcy petitions and schedules much easier than years ago. Mr. Ostling recalled preparing bankruptcy schedules with carbon paper. In addition, the huge increase in the volume of bankruptcies over the last two decades has made bankruptcy practice much more economical. Mr. Narmont explained that, with the increased bankruptcy filings, it does not take much more time to come over to the Bankruptcy Court for six hearings than it does for one hearing. Finally, Mr. Chesley noted that an increase in attorney specialization has helped to keep fees down.

Mr. Geraci offered his opinion that a fee of $350 is so unusually low that no one can make a profit at this level. This opinion was contradicted by all the attorneys who testified. They all stated that their bankruptcy work was profitable. Mr. Bourey stated that he would not be doing bankruptcy work if he was not making money. Mr. Chesley stated that his bankruptcy practice was more profitable than servicing clients on an hourly basis.

■ Mr. Geraci testified that he charges the same fees everywhere he practices. This assertion is difficult to verify from the cases before the Court because these cases show fees ranging from $850 to $1195. All of the cases are relatively simple cases, and there is little apparent difference in the work required by each case. In any event,

reasonable hourly rates are determined by the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. *Blum v. Stenson,* 465 U.S. 886, 889 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984). The relevant legal community used in determining the prevailing market rate for this Court is the legal community within the Springfield Division of the Central District of Illinois. The fees charged by Mr. Geraci in Chicago, Indianapolis, Milwaukee and other cities are not relevant to the Court's consideration of Mr. Geraci's fees.

Mr. Ostling offered a cogent economic explanation for the reason that fees vary by community. Mr. Ostling explained that the basic fee for a Chapter 7 case in Bloomington is $400, but he charges an additional $150 in Pontiac because of the travel time involved in going to the bankruptcy hearings which are held in Kankakee. In Decatur, however, Mr. Ostling charges only $250 for a Chapter 7 case because of his low overhead in Decatur. Mr. Ostling noted that he pays $11.86 per square foot for his rent in Bloomington and $4.50 per square foot in rent in Decatur. Moreover, competition from State Farm and other businesses in Bloomington force Mr. Ostling to pay $12 per hour for a secretary in Bloomington, but he can hire secretarial help in Decatur for only $6 per hour. Thus, the market forces so admired by Mr. Geraci result in different fees in different communities.

Mr. Geraci concedes that the Court has the power under § 329(b) to review fees where they are unreasonable. However, he argues that his fees are reasonable. He refused to answer the Court's query as to the point at which fees become unreasonable.

Mr. Geraci argues that his fees are justified by the quality of his work. There is no evidence in these 15 cases to support Mr. Geraci's bold assertion. The work product in these cases is certainly no better than average. These cases are very simple cases. Mr. Geraci has not filed a motion to redeem, a motion to avoid a lien, a motion for turnover, or any other motion that might require a court appearance in any of these cases. The Statements of Intent in these cases indicate an intention to reaffirm on almost everything, including unsecured credit cards. This Court does not believe that a reaffirmation on an unsecured credit card is in the best interests of debtors. The Court is particularly concerned about the statements on the schedules in *Massey* that the Debtors intend to contact the creditor to reaffirm the balance in full on four of the five unsecured debts, three of which are credit cards.

Mr. Geraci's work is also not on a par with other bankruptcy practitioners in the District. In *Pittman,* Mr. Geraci placed Normal, Illinois, in Champaign County rather than McLean County. Mr. Geraci did not sign the Rule 2016(b) Statement in *Renfro,* and his signature on the Rule 2016(b) Statement was undated in *Pittman* and *Lilly.* In *Parnell,* Mr. Geraci did not sign a Rule 39 Affidavit, and his signature on the petition was undated.

Mr. Geraci's motion practice leaves something to be desired. Mr. Geraci filed a Motion to Consolidate 13 cases, but only filed the motion in one case. The proper method is to file the motion in each case which is the subject of the motion to consolidate. Mr. Geraci was apparently motivated to file the one motion because the attachments to his motion would have been costly to reproduce in all 13 cases. These attachments, however, were largely irrelevant and immaterial to the issue in this case.

Mr. Geraci's abilities as a trial lawyer also do not meet the standards one usually finds in federal court. At the close of the United States Trustee's case, Mr. Geraci moved for a directed verdict. As most experienced trial lawyers realize, a motion for a directed verdict is inappropriate where there is no jury to direct. The proper motion is a motion for involuntary dismissal under F.R.Civ.P. 41(b). This distinction is often important because Rule 41(b) allows the judge to rule on conflicts of evidence and credibility, unlike a

motion to direct a verdict in a jury case where the judge may not resolve such conflicts.

Mr. Geraci's appellate work has also been criticized. A good appellate lawyer uses his skill and experience to select an appropriate case to appeal. In addition, the filing of a timely appeal is the first step in any successful appeal. One of the myriad documents attached to Mr. Geraci's Response to the Motion to Show Cause is the transcript of a hearing before District Judge Kocoras in *Geraci v. Bryson,* No. 96–C–4970 (N.D.Ill. East. Dir. Sept. 24, 1996). The transcript includes the following exchange between Judge Kocoras and Mr. Diamond of the Geraci firm:

> The Court: And you did not file an appeal timely, although untimely you filed a motion to reconsider, which was later withdrawn. Is that what happened here?

> Mr. Diamond: That is correct, your Honor.

Judge Kocoras further noted that the Geraci firm's use of a motion to reconsider to toll the time to file an appeal was "a misuse of the process." Judge Kocoras stated that the motion for reconsideration was filed without good faith. Finally, Judge Kocoras noted that the appeal over less than $200 was a waste of his time and "not good advertising" for the Geraci firm.

The Court further finds that Mr. Geraci's service to his clients is poor. The cases before the Court indicate that it is not unusual for Mr. Geraci to delay the filing of a petition for four to six weeks. For example, the petition in *Perry–Senters* was signed on October 22, 1996, but not filed until December 2, 1996; *Massey* was signed on October 28, 1996, and filed on December 2, 1996; *Minick* was signed on October 14, 1996, and filed on December 2, 1996; *Sams* was signed on September 2, 1996, and filed on October 18, 1996; and *Day* was signed on September 6, 1996, and filed on October 18, 1996. The record does not reveal whether any of his clients were prejudiced by these delays. In bankruptcy, however, such delays can be costly to debtors. Mr. Geraci apparently wanted to file these petitions in bulk in order to save attorney time in attending the meetings of creditors. While this is not an unusual practice, one expects more than bargain basement service for the premium fee charged by Mr. Geraci.

Mr. Geraci stated that none of his clients have ever complained about his attorney's fees. However, as Judge Schmetterer explained to Mr. Geraci in *In re Wyslak,* 94 B.R. 540 (Bankr.N.D.Ill.1988), a debtor's approval of a fee (or a Chapter 7 trustee's failure to question it) provides no basis for arguing that a Bankruptcy Court should not hold a fee hearing or make a determination on fees. Judge Schmetterer stated that a Bankruptcy "Court has the authority and duty to inquire independently into fees of professionals in bankruptcy matters even where no objections are filed" under §§ 329 and 330, Bankruptcy Rules 2016 and 2017, and the relevant case law. 94 B.R. at 51. *See, In re Richardson,* 89 B.R. 716 (Bankr. N.D.Ill.1988).

Mr. Geraci testified that his fees are quoted up front and in writing to prospective clients. However, he admitted that several of his clients testified at their meetings of creditors that Mr. Geraci did not quote his fees over the phone.

■ Mr. Geraci argues that the Court cannot question the reasonableness of his fees in the absence of overreaching. While it is true that the prevention of overreaching by debtor's attorneys was one of the motivations behind the enactment of § 329, the statute itself does not require proof of overreaching in order to find fees unreasonable. In any event, there are signs of overreaching in several of these cases. Mr. Geraci has had a number of his clients sign form affidavits which contain false or misleading information. The form affidavit provides in part as follows: "I understand that most attorneys who do this kind of [consumer Chapter 7] work regularly work for the bill collectors, banks and creditors, and so does the U.S. Trustee who will examine my petition." Mr.

Geraci produced no evidence in support of this wild allegation. All of the evidence before the Court indicates that the attorneys who regularly do Chapter 7 work on behalf of debtors do little or no work for creditors. The allegation against the U.S. Trustee is so preposterous that it may be rejected without further comment. The form affidavit further states that the "U.S. Trustee and Bankruptcy Judges want to hold the attorneys' fees of debtors' attorneys at 1975 levels" and "this results in driving smart lawyers out of the debtor bankruptcy field." The evidence produced at trial showed that there are still a number of highly qualified lawyers practicing in the consumer debtor field in the Springfield Division of the Central District of Illinois. Finally, Mr. Geraci did not produce any of his clients at the hearing to testify in court as to their opinions on his fees. Affidavits may serve a useful purpose for matters to be decided on a motion, but they are no substitute for live testimony at a hearing.

Mr. Geraci has alleged that the United States Trustee has initiated this proceeding "in a conspiracy to restrain competition and cover up the 'no money down' scandal in Central Illinois." Mr. Geraci did not produce any evidence at trial to support these allegations. A conspiracy, of course, must by definition contain more than one party, but Mr. Geraci does not identify the other conspirators. Moreover, while working on a "no money down" basis is probably not a good business practice for a bankruptcy practitioner, it is not illegal or immoral. Indeed, installment payments are contemplated by § 329(a) which requires attorneys to "file with the court a statement of the compensation paid or *agreed to be paid* ..." (emphasis added). More important, this issue is a red herring which is irrelevant and immaterial to the issue before the Court, which is the reasonableness of Mr. Geraci's fees.

Mr. Geraci estimated that the attorneys in his office spend about 10 hours on each Chapter 7 case. He based this estimate on the number of attorneys in his office, the number of Chapter 7 cases his office files, the number of hours each attorney in his office works in a given week, and the fact that they only do consumer bankruptcies. He did not submit an itemized statement of his fees in any of these cases. Mr. Geraci does not like hourly billing. He thinks that it is fraudu-

lent and unethical. He alleges that "[i]t communizes labor, and is a product of Marxist thinking." He states that "[a]nyone who reads anything in the area of Law Office Economics knows that ... [h]ourly billing practices are fading, and more realistic methods of charging for services have been in favor for the last 10 years." Mr. Geraci does not cite any cases in support of his lonely crusade against hourly billing. The most distinguished attorney to practice in the Central District of Illinois, Abraham Lincoln, is said to have remarked that "A lawyer's time and advice are his stock in trade." Lawyers in this District have been billing clients based on their time for years. In addition, the Seventh Circuit has endorsed the lodestar fee—the number of billable hours times reasonable hourly rates—as the proper method for calculating fees in bankruptcy cases. *In re UNR Industries, Inc.,* 986 F.2d 207, 210 (7th Cir.1993). Mr. Geraci's argument against hourly billing is rejected.

■ Over 3,000 bankruptcy cases are filed in this Division each year. As such, it would be impractical for the Court to conduct a fee hearing in every case. Prior to this time, this Court has never set any type of standard for attorney's fees for services rendered in a Chapter 7 case. However, the increasing volume of Chapter 7 cases makes it necessary for the Court to set a point at which the Court will start examining fees in Chapter 7 cases. *See, In re Chellino, et al.,* 209 B.R. 106 (Bankr.C.D.Ill.1996) (Fines, J.); *In re Barger,* 180 B.R. 326 (Bankr.S.D.Ga.1995). This level is determined after a consideration of the typical obligations undertaken by Chapter 7 attorneys, the time and effort devoted to a case, and the fees charged by bankruptcy lawyers in the District. At this point in time, fees in Chapter 7 cases in the Springfield Division of the Central District of Illinois will not be questioned by the Court if they do not exceed $600.

Mr. Geraci complains that there should not be a "ceiling" or "limit" to his fees. In fact, there is no such ceiling or cap on attorney's fees. The Court recognizes that some cases require much more time, attention and work than other cases. In the event an attorney

determines that $600 does not adequately compensate the attorney for his legal services, the attorney may petition the Court for additional compensation. Of course, the attorney shall be required to establish the reasonableness of all attorney's fees from the beginning of the case pursuant to § 330. Thus, the $600 figure is not a cap on fees, but rather the point at which a Chapter 7 attorney must start showing the Court that the attorney is worth the money.

■ In the cases before the Court, Mr. Geraci has failed to produce any evidence to suggest that his services were worth more than $575, which is the highest fee testified to by a witness in these cases. Accordingly, Mr. Geraci is directed to disgorge all fees in excess of $575 in each of these cases and return these excessive funds to the case Trustee within 15 days of the entry of this Order. The Chapter 7 Trustee is directed to determine whether these funds constitute exempt property to be returned to the Debtors or nonexempt property of the estate which should be distributed to creditors.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.